## BRADY *v.* UNITED STATES

No. 270. Argued November 18, 1969—Decided May 4, 1970

*Peter J. Adang,* by appointment of the Court, 396 U. S. 809, argued the cause and filed a brief for petitioner.

*Joseph J. Connolly* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Jerome M. Feit,* and *Marshall Tamor Golding.*

MR. JUSTICE WHITE delivered the opinion of the Court.

In 1959, petitioner was charged with kidnaping in violation of 18 U. S. C. § 1201 (a).[1] Since the indictment charged that the victim of the kidnaping was not liberated unharmed, petitioner faced a maximum penalty of death if the verdict of the jury should so recommend. Petitioner, represented by competent counsel throughout, first elected to plead not guilty. Apparently because the trial judge was unwilling to try the case without a jury, petitioner made no serious attempt to reduce the possibility of a death penalty by waiving a jury trial. Upon learning that his codefendant, who had confessed to the authorities, would plead guilty and be available to testify against him, petitioner changed his plea to guilty. His plea was accepted after the trial judge twice questioned him as to the voluntariness of his plea.[2]

---

[1] "Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

[2] Eight days after petitioner pleaded guilty, he was brought before the court for sentencing. At that time, the court questioned petitioner for a second time about the voluntariness of his plea:

"THE COURT: . . . Having read the presentence report and the statement you made to the probation officer, I want to be certain

Petitioner was sentenced to 50 years' imprisonment, later reduced to 30.

In 1967, petitioner sought relief under 28 U. S. C. § 2255, claiming that his plea of guilty was not voluntarily given because § 1201 (a) operated to coerce his plea, because his counsel exerted impermissible pressure upon him, and because his plea was induced by representations with respect to reduction of sentence and clemency. It was also alleged that the trial judge had not fully complied with Rule 11 of the Federal Rules of Criminal Procedure.[3]

---

that you know what you are doing and you did know when you entered a plea of guilty the other day. Do you want to let that plea of guilty stand, or do you want to withdraw it and plead not guilty?

"DEFENDANT BRADY: I want to let that plea stand, sir.

"THE COURT: You understand that in doing that you are admitting and confessing the truth of the charge contained in the indictment and that you enter a plea of guilty voluntarily, without persuasion, coercion of any kind? Is that right?

"DEFENDANT BRADY: Yes, your Honor.

"THE COURT: And you do do that?

"DEFENDANT BRADY: Yes, I do.

"THE COURT: You plead guilty to the charge?

"DEFENDANT BRADY: Yes, I do." App. 29–30.

[3] When petitioner pleaded guilty, Rule 11 read as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

Rule 11 was amended in 1966 and now reads as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If

After a hearing, the District Court for the District of New Mexico denied relief. According to the District Court's findings, petitioner's counsel did not put impermissible pressure on petitioner to plead guilty and no representations were made with respect to a reduced sentence or clemency. The court held that § 1201 (a) was constitutional and found that petitioner decided to plead guilty when he learned that his codefendant was going to plead guilty: petitioner pleaded guilty "by reason of other matters and not by reason of the statute" or because of any acts of the trial judge. The court concluded that "the plea was voluntarily and knowingly made."

The Court of Appeals for the Tenth Circuit affirmed, determining that the District Court's findings were supported by substantial evidence and specifically approving the finding that petitioner's plea of guilty was voluntary. 404 F. 2d 601 (1968). We granted certiorari, 395 U. S. 976 (1969), to consider the claim that the Court of Appeals was in error in not reaching a contrary result on the authority of this Court's decision in *United States* v. *Jackson,* 390 U. S. 570 (1968). We affirm.

I

In *United States* v. *Jackson, supra,* the defendants were indicted under § 1201 (a). The District Court dismissed the § 1201 (a) count of the indictment, holding

a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

In *McCarthy* v. *United States,* 394 U. S. 459 (1969), we held that a failure to comply with Rule 11 required that a defendant who had pleaded guilty be allowed to plead anew. In *Halliday* v. *United States,* 394 U. S. 831 (1969), we held that the *McCarthy* rule should apply only in cases where the guilty plea was accepted after April 2, 1969, the date of the *McCarthy* decision.

the statute unconstitutional because it permitted imposition of the death sentence only upon a jury's recommendation and thereby made the risk of death the price of a jury trial. This Court held the statute valid, except for the death penalty provision; with respect to the latter, the Court agreed with the trial court "that the death penalty provision . . . imposes an impermissible burden upon the exercise of a constitutional right . . . ." 390 U. S., at 572. The problem was to determine "whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury." 390 U. S., at 581. The inevitable effect of the provision was said to be to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. Because the legitimate goal of limiting the death penalty to cases in which a jury recommends it could be achieved without penalizing those defendants who plead not guilty and elect a jury trial, the death penalty provision "needlessly penalize[d] the assertion of a constitutional right," 390 U. S., at 583, and was therefore unconstitutional.

Since the "inevitable effect" of the death penalty provision of § 1201 (a) was said by the Court to be the needless encouragement of pleas of guilty and waivers of jury trial, Brady contends that *Jackson* requires the invalidation of every plea of guilty entered under that section, at least when the fear of death is shown to have been a factor in the plea. Petitioner, however, has read far too much into the *Jackson* opinion.

The Court made it clear in *Jackson* that it was not holding § 1201 (a) inherently coercive of guilty pleas: "the fact that the Federal Kidnaping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that

every defendant who enters a guilty plea to a charge under the Act does so involuntarily." 390 U. S., at 583. Cited in support of this statement, 390 U. S., at 583 n. 25, was *Laboy* v. *New Jersey*, 266 F. Supp. 581 (D. C. N. J. 1967), where a plea of guilty (non vult) under a similar statute was sustained as voluntary in spite of the fact, as found by the District Court, that the defendant was greatly upset by the possibility of receiving the death penalty.

Moreover, the Court in *Jackson* rejected a suggestion that the death penalty provision of § 1201 (a) be saved by prohibiting in capital kidnaping cases all guilty pleas and jury waivers, "however clear [the defendants'] guilt and however strong their desire to acknowledge it in order to spare themselves and their families the spectacle and expense of protracted courtroom proceedings." "[T]hat jury waivers and guilty pleas may occasionally be rejected" was no ground for automatically rejecting all guilty pleas under the statute, for such a rule "would rob the criminal process of much of its flexibility." 390 U. S., at 584.

Plainly, it seems to us, *Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. *Jackson* prohibits the imposition of the death penalty under § 1201 (a), but that decision neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both "voluntary" and "intelligent." See *Boykin* v. *Alabama*, 395 U. S. 238, 242 (1969).[4]

---

[4] The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. See nn. 5 and 6, *infra*. The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded

That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice.[5] But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.[6] On neither score was Brady's plea of guilty invalid.

---

guilty entered his plea understandingly and voluntarily. This Court has not yet passed on the question of the retroactivity of this new requirement.

[5] *Machibroda* v. *United States,* 368 U. S. 487, 493 (1962); *Waley* v. *Johnston,* 316 U. S. 101, 104 (1942); *Walker* v. *Johnston,* 312 U. S. 275, 286 (1941); *Chambers* v. *Florida,* 309 U. S. 227 (1940); *Kercheval* v. *United States,* 274 U. S. 220, 223 (1927).

[6] See *Brookhart* v. *Janis,* 384 U. S. 1 (1966); *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 275 (1942); *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938); *Patton* v. *United States,* 281 U. S. 276, 312 (1930).

Since an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney, this Court has scrutinized with special care pleas of guilty entered by defendants without the assistance of counsel and without a valid waiver of the right to counsel. See *Pennsylvania ex rel. Herman* v. *Claudy,* 350 U. S. 116 (1956); *Von Moltke* v. *Gillies,* 332 U. S. 708 and 727 (1948) (opinions of BLACK and Frankfurter, JJ.); *Williams* v. *Kaiser,* 323 U. S. 471 (1945). Since *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), it has been clear that a guilty

## II

The trial judge in 1959 found the plea voluntary before accepting it; the District Court in 1968, after an evidentiary hearing, found that the plea was voluntarily made; the Court of Appeals specifically approved the finding of voluntariness. We see no reason on this record to disturb the judgment of those courts. Petitioner, advised by competent counsel, tendered his plea after his codefendant, who had already given a confession, determined to plead guilty and became available to testify against petitioner. It was this development that the District Court found to have triggered Brady's guilty plea.

The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it. Cf. *Haynes* v. *Washington,* 373 U. S. 503, 513 (1963); *Leyra* v. *Denno,* 347 U. S. 556, 558 (1954). One of these circumstances was the possibility of a heavier sentence following a guilty verdict after a trial. It may be that Brady, faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty.[7] But

___

plea to a felony charge entered without counsel and without a waiver of counsel is invalid. See *White* v. *Maryland,* 373 U. S. 59 (1963); *Arsenault* v. *Massachusetts,* 393 U. S. 5 (1968).

The importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of our recent decisions in *McCarthy* v. *United States, supra,* and *Boykin* v. *Alabama,* 395 U. S. 238 (1969). See nn. 3 and 4, *supra.*

[7] Such a possibility seems to have been rejected by the District Court in the § 2255 proceedings. That court found that "the plea of guilty was made by the petitioner by reason of other matters and not by reason of the statute . . . ."

even if we assume that Brady would not have pleaded guilty except for the death penalty provision of § 1201(a), this assumption merely identifies the penalty provision as a "but for" cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act.

The State to some degree encourages pleas of guilty at every important step in the criminal process. For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family. All these pleas of guilty are valid in spite of the State's responsibility for some of the factors motivating the pleas; the pleas are no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction.

Of course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. But nothing of the sort is claimed in this case; nor is there evidence that Brady was so gripped by fear of the death penalty or hope of leniency that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty. Brady's claim is of a different sort: that it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency and that a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for

the crime charged if a conviction is obtained after the State is put to its proof.

Insofar as the voluntariness of his plea is concerned, there is little to differentiate Brady from (1) the defendant, in a jurisdiction where the judge and jury have the same range of sentencing power, who pleads guilty because his lawyer advises him that the judge will very probably be more lenient than the jury; (2) the defendant, in a jurisdiction where the judge alone has sentencing power, who is advised by counsel that the judge is normally more lenient with defendants who plead guilty than with those who go to trial; (3) the defendant who is permitted by prosecutor and judge to plead guilty to a lesser offense included in the offense charged; and (4) the defendant who pleads guilty to certain counts with the understanding that other charges will be dropped. In each of these situations,[8] as in Brady's case, the defendant might never plead guilty absent the possibility or certainty that the plea will result in a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty. We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.

The issue we deal with is inherent in the criminal law and its administration because guilty pleas are not

---

[8] We here make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty. In Brady's case there is no claim that the prosecutor threatened prosecution on a charge not justified by the evidence or that the trial judge threatened Brady with a harsher sentence if convicted after trial in order to induce him to plead guilty.

constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof.[9] It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty,[10] a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

Of course, that the prevalence of guilty pleas is explainable does not necessarily validate those pleas or

[9] For a more elaborate discussion of the factors that may justify a reduction in penalty upon a plea of guilty, see American Bar Association Project on Standards for Criminal Justice, Pleas of Guilty § 1.8 and commentary, pp. 37–52 (Approved Draft 1968).

[10] It has been estimated that about 90%, and perhaps 95%, of all criminal convictions are by pleas of guilty; between 70% and 85% of all felony convictions are estimated to be by guilty plea. D. Newman, Conviction, The Determination of Guilt or Innocence Without Trial 3 and n. 1 (1966).

the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

A contrary holding would require the States and Federal Government to forbid guilty pleas altogether, to provide a single invariable penalty for each crime defined by the statutes, or to place the sentencing function in a separate authority having no knowledge of the manner in which the conviction in each case was obtained. In any event, it would be necessary to forbid prosecutors and judges to accept guilty pleas to selected counts, to lesser included offenses, or to reduced charges. The Fifth Amendment does not reach so far.

*Bram* v. *United States,* 168 U. S. 532 (1897), held that the admissibility of a confession depended upon whether it was compelled within the meaning of the Fifth Amendment. To be admissible, a confession must be " 'free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " 168 U. S., at 542–543. More recently, *Malloy* v. *Hogan,* 378 U. S. 1 (1964), carried forward the *Bram* definition of compulsion in the course of holding applicable to the States the Fifth Amendment privilege against compelled self-incrimination.[11]

---

[11] *Malloy* v. *Hogan,* 378 U. S. 1, 7 (1964). See also *Haynes* v. *Washington,* 373 U. S. 503, 513 (1963); *Lynumn* v. *Illinois,* 372 U. S. 528 (1963); *Wilson* v. *United States,* 162 U. S. 613, 622–623 (1896).

*Bram* is not inconsistent with our holding that Brady's plea was not compelled even though the law promised him a lesser maximum penalty if he did not go to trial. *Bram* dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess. But *Bram* and its progeny did not hold that the possibly coercive impact of a promise of leniency could not be dissipated by the presence and advice of counsel, any more than *Miranda* v. *Arizona,* 384 U. S. 436 (1966), held that the possibly coercive atmosphere of the police station could not be counteracted by the presence of counsel or other safeguards.[12]

Brady's situation bears no resemblance to Bram's. Brady first pleaded not guilty; prior to changing his plea to guilty he was subjected to no threats or promises in face-to-face encounters with the authorities. He had competent counsel and full opportunity to assess the advantages and disadvantages of a trial as compared with those attending a plea of guilty; there was no hazard of an impulsive and improvident response to a seeming but unreal advantage. His plea of guilty was entered in open court and before a judge obviously sensitive to

---

[12] "The presence of counsel, in all the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege [against compelled self-incrimination]. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion." *Miranda* v. *Arizona,* 384 U. S. 436, 466 (1966).

the requirements of the law with respect to guilty pleas. Brady's plea, unlike Bram's confession, was voluntary.

The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:

> " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).' 242 F. 2d at page 115." [13]

Under this standard, a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty.[14]

---

[13] *Shelton* v. *United States,* 246 F. 2d 571, 572 n. 2 (C. A. 5th Cir. 1957) (*en banc*), rev'd on confession of error on other grounds, 356 U. S. 26 (1958).

[14] Our conclusion in this regard seems to coincide with the conclusions of most of the lower federal courts that have considered whether a guilty plea to avoid a possible death penalty is involuntary. See *United States ex rel. Brown* v. *LaVallee,* 424 F. 2d 457 (C. A. 2d Cir. 1970); *United States* v. *Thomas,* 415 F. 2d 1216 (C. A. 9th Cir. 1969); *Pindell* v. *United States,* 296 F. Supp. 751 (D. C. Conn. 1969); *McFarland* v. *United States,* 284 F. Supp. 969 (D. C. Md. 1968), aff'd, No. 13,146 (C. A. 4th Cir., May 1, 1969), cert. denied, *post,* p. 1077; *Laboy* v. *New Jersey,* 266 F. Supp. 581 (D. C. N. J. 1967); *Gilmore* v. *California,* 364 F. 2d 916 (C. A. 9th Cir. 1966); *Busby* v. *Holman,* 356 F. 2d 75 (C. A. 5th Cir. 1966); *Cooper* v. *Holman,* 356 F. 2d 82 (C. A. 5th Cir.), cert. denied, 385 U. S. 855 (1966); *Godlock* v. *Ross,* 259 F. Supp. 659 (D. C. E. D. N. C. 1966); *United States ex rel. Robinson* v. *Fay,* 348 F. 2d 705 (C. A. 2d Cir. 1965), cert. denied, 382 U. S. 997

## III

The record before us also supports the conclusion that Brady's plea was intelligently made. He was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties; once his confederate had pleaded guilty and became available to testify, he chose to plead guilty, perhaps to ensure that he would face no more than life imprisonment or a term of years. Brady was aware of precisely what he was doing when he admitted that he had kidnaped the victim and had not released her unharmed.

It is true that Brady's counsel advised him that § 1201 (a) empowered the jury to impose the death penalty and that nine years later in *United States* v. *Jackson, supra,* the Court held that the jury had no such power as long as the judge could impose only a lesser penalty if trial was to the court or there was a plea of guilty. But these facts do not require us to set aside Brady's conviction.

Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly

(1966); *Overman* v. *United States,* 281 F. 2d 497 (C. A. 6th Cir. 1960), cert. denied, 368 U. S. 993 (1962); *Martin* v. *United States,* 256 F. 2d 345 (C. A. 5th Cir.), cert. denied, 358 U. S. 921 (1958). But see *Shaw* v. *United States,* 299 F. Supp. 824 (D. C. S. D. Ga. 1969); *Alford* v. *North Carolina,* 405 F. 2d 340 (C. A. 4th Cir. 1968), prob. juris. noted, 394 U. S. 956 (1969), restored to calendar for reargument, *post,* p. 1060.

sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. *Von Moltke* v. *Gillies,* 332 U. S. 708 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

The fact that Brady did not anticipate *United States* v. *Jackson, supra,* does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

This is not to say that guilty plea convictions hold no hazards for the innocent or that the methods of taking guilty pleas presently employed in this country are

necessarily valid in all respects. This mode of conviction is no more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial. We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crimes with which they are charged. In the case before us, nothing in the record impeaches Brady's plea or suggests that his admissions in open court were anything but the truth.

Although Brady's plea of guilty may well have been motivated in part by a desire to avoid a possible death penalty, we are convinced that his plea was voluntarily and intelligently made and we have no reason to doubt that his solemn admission of guilt was truthful.

*Affirmed.*

Mr. Justice Black, while adhering to his belief that *United States* v. *Jackson,* 390 U. S. 570, was wrongly decided, concurs in the judgment and in substantially all of the opinion in this case.

[For opinion of Mr. Justice Brennan, concurring in the result, see *post,* p. 799.]