Burke, J. (dissenting).
These cases dramatically indicate that the appellate courts of this State are responsible to a great degree for court congestion by their decisions granting hearings relating to coram nobis, habeas corpus and, as here, the withdrawal of pleas of guilty at the time of sentence. The time of Trial Judges, District Attorneys, court attendants and courtroom space have needlessly been taken up because of the overly permissive decisions of the majority of our appellate Judges in directing the raking over of dead leaves at the expense of the taxpayers of the State. A small fraction of coram nobis applications, habeas corpus applications and applications to withdraw pleas of guilty (often made when sentencing looms) have even slight merits. Literally, thousands of hours have been wasted at the taxpayers’ expense—time which should have been devoted to the reduction of crime rampant in this State. The increase in crime is largely due to the fact that criminals are aware of the fact that proper punishment is rare because appellate decisions have created needless congestion in the court system during the last 15 years.
Defendant King and one Michael Smith were indicted and charged with the crimes of robbery in the first degree, a Class B felony, and robbery in the second degree. Defendant King, in the presence of his attorney, withdrew his plea of not guilty to the serious charge and pleaded guilty to grand larceny in the third degree, a Class E felony. At that time, the court was apprised of the fact that defendant admitted conviction on two misdemeanors. The defendant stated that he understood that by pleading guilty he waived his right to a jury trial and subjected himself to a prison sentence. He stated that by pleading guilty to the reduced charge he would be given a lesser sentence than if he was convicted of the charge in the indictment. He also informed the court that no force or duress was used to secure his pleas. The defendant’s counsel then stated that he had fully *699 investigated the case and did not doubt the guilt of his client. The court, asked the defendant if he forcibly stole money from a Frazier Hatch while having and threatening to use a dangerous weapon. The defendant said “ Say that again Judge”. The Judge repeated the question and the defendant answered “Yes”.
On the day of sentence the Judge noted that defendant had nine previous brushes with the law and a prior youthful offender adjudication.
Both the defendant and the codefendant, to the surprise of their attorneys, sought to withdraw the guilty pleas.
The court declared that everything in the probation report • pointed to guilt. Specifically, the court noted that Mr. Smith’s mother was a witness to the crime and confirmed the complainant’s version of the event. Thereupon, the court denied the motion to withdraw the plea of guilty.
It is, of course, clear that the plea given was a good bargain made by a man who was thoroughly familiar with courtroom procedures and that the plea was intelligently and voluntarily given. The trial court, which was unanimously affirmed by the Appellate Division, made an informed decision in denying the motion to withdraw the plea. The surprise to defense counsel indicated that defendant had told him he was guilty. In People v. Dixon (29 N Y 2d 55, 57) this court wrote: “ [a] defendant is not entitled to withdraw his guilty plea based on a subsequent unsupported claim of innocence, where the guilty plea was voluntarily made with the advice of counsel following an appraisal of all the relevant factors including defendant’s numerous prior convictions, the likelihood of eyewitness testimony confronting him at a trial and the hope of a reduced charge and sentence.” Moreover, the applicable statute in effect at the date of sentence, section 337 of the Code of Criminal Procedure, permits a court “ in its discretion ” to allow a guilty plea to be withdrawn.
The Appellate Division possesses the same “discretion”. This court, however, does not. We must find an abuse of discretion. Based oh the record presently before us, there is a complete lack of evidence to support a finding of an abuse of discretion. The facts simply do not show an abuse — even if the rationale of People v. Nixon (21 N Y 2d 338) and Brady v. United States (397 U. S. 742) be literally applied. In Brady v. United States (397 U. S. 742, 758, supra) Justice White stated: *700 “ But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants’ admissions that they committed the crimes with which they were charged In People v. Nixon (21 N Y 2d 338, 355, supra) this court held that ‘ ‘ It should never be enough to undo a plea because of some omission in inquiry at the time of the plea without a showing of prejudice.” In this case there was no omission.
Turning to the McClain case, we must first consider People v. Fooks (21 N Y 2d 338, 350) where we held that failure to spell out the factual details of the crime is not sufficient to invalidate a plea. That case was not as strong as the McClain case. In McClain, the defendant was twice indicted—Indictment No. 35199 and Indictment No. 34161, and, in each case, he was represented by separate attorneys. The defendant, with each attorney present in court, moved to withdraw his plea of not guilty to the consolidated indictments and to plead guilty to a reduced charge on Indictment No. 35199 in satisfaction of both indictments. The court at the time of taking the plea asked the defendant if he was aware of all facets of the plea proceeding. He indicated verbally that there was not a thing about the plea he did not understand. This statement confirmed that the court explained that by the plea McClain waived a jury trial, his right against self incrimination as well as the right of confrontation of the witnesses against him. The court then asked him if he, Arthur McClain, had knowingly entered and remained unlawfully in the enclosed motor truck-trailer with intent to commit a crime therein. The defendant answered “ yes ”. The court then asked him if he was the same Arthur McClain. The defendant answered “ yes ”. His two lawyers on the separate indictments had consulted with him and explained the problems. After the probation investigation, it developed that defendant was subject to another charge pending in the City Court of Buffalo for house burglary. On sentencing, the two attorneys informed the court they were ready for trial but defendant insisted on pleading guilty. The defendant never argued that he was innocent but only that he did not commit the Class A felonies alleged in the indictments. The court then reminded him that he pleaded only to a Class E felony and that he admit *701 ted he had unlawfully entered the truck. McClain assured the court that he understood all the consequences of the plea as well as he could. The probation report showed that he had been before other Judges on at least five occasions—some of them of a felony nature — and that he was on probation one previous occasion and had not responded to it. In other words, he was a parole violator at the time he pleaded guilty.
In accord with this court’s decisions in People v. Dixon (29 N Y 2d 55, supra), People v. Nixon (21 N Y 2d 338, supra) and Brady v. United States (397 U. S. 742, supra), the court denied the motion to withdraw the plea as the defendant gave no factual basis to support his claim. What McClain said was that he really didn’t commit all those crimes that were described in the indictment, but he never denied that he was guilty of the Class E felony. Thus, this was not a claim of innocence but merely a dilatory tactic — a tactic that surprised his attorneys and one which led to an interference with the efficient administration of justice to confirmed criminals.
What is more shameful, however, is that this court in a brief memorandum, without stating the facts, ignores its jurisdiction, the applicable statute and the doctrine of stare decisis. This reversal, a mere ‘ ‘ ipse dixit ’ ’, adds another ingredient to the waste of court time and court personnel.
The impeaching of the integrity of defense counsel and the impugnation of the concern of all the Justices below, charging them with an abuse of discretion when they had carefully and thoroughly considered all the relevant factors and had patiently explained in detail all the consequences of the taking of the bargained plea by these experienced criminals — all this is senseless repetition at the expense of the victims and the taxpayers.
The orders of the Appellate Division should be affirmed.