Tamara M. UPTON, Petitioner—
Appellant,

v.

Sonya HOYT, Superintendent Oregon
Women's Correctional Center,
Respondent—Appellee.

No. 01–36020.
D.C. No. CV–99–00361–TUC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided July 25, 2002.

Before GOODWIN, T.G. NELSON and
W. FLETCHER, Circuit Judges.

MEMORANDUM *

Tamara Upton ("Upton"), an Oregon
state prisoner, pled guilty to aggravated

* This disposition is not appropriate for publica-    tion and may not be cited to or by the courts

murder and stipulated to a life sentence without the possibility of parole. She appeals the district court's denial of her 28 U.S.C. § 2254 petition, alleging that her plea was not knowing, intelligent, and voluntary. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

▆ Upton contends that her plea was involuntary because she was not made "fully aware of the direct consequences" of her plea. She maintains that she believed that her guilty plea entitled her to an appeal of her sentence on the merits, not an appeal that turned out to be unreviewable.

Upton correctly observes that a guilty plea is voluntary only if "it is entered by one fully aware of the *direct* consequences of [the] plea." *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir.1988) (emphasis added); *see also Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (observing that, unless induced by threats, misrepresentation or improper prosecutorial promises, "a plea of guilty entered by one fully aware of the direct consequences . . . must stand"). Accordingly, a trial court must advise a defendant of the direct consequences of a guilty plea. *United States v. Amador–Leal*, 276 F.3d 511, 514 (9th Cir.2002). A trial court, however, is not required to advise a defendant of the *collateral* consequences of a guilty plea. *Id.; see also United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir.2000); *Torrey*, 842 F.2d at 235.

The direct consequences of a plea are those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *Littlejohn*, 224 F.3d at 965. Collateral consequences are "contingent upon action taken by an individual or individuals other than the

sentencing court—such as another governmental agency or the defendant himself." *Id.; see also Amador–Leal*, 276 F.3d at 514; *Torrey*, 842 F.2d at 236. Here, because the decision on Upton's constitutional challenge to her sentence was in the hands of another governmental agency, the state appellate court, the "consequences" complained of by Upton are collateral, not direct. Consequently, the trial court was not required to advise Upton that the Oregon Court of Appeals might decline to review the merits of her constitutional challenge to her sentence.

▆ Further, the record does not indicate that the direct consequences of the plea agreement were misrepresented to Upton. At the plea hearing, Upton's counsel informed the sentencing judge that he had discussed the plea agreement with Upton. Counsel stated that he had informed Upton of the following: (1) by pleading guilty, she would be giving up her right to a trial by jury, her right to confront and cross-examine witnesses, and her right to not incriminate herself; (2) she was pleading guilty to a charge that could result in the death penalty; and (3) she was preserving her right to appeal her stipulated sentence. Counsel also stated that he had conferred with Upton and determined that she was not taking any medications that could impair her ability to make a rational decision in entering the plea agreement. Upton then told the sentencing judge that her lawyer had not misrepresented any of his statements, and pled guilty to the charge of aggravated murder. Taken together, these facts do not indicate that Upton was misadvised about the *direct consequences* of the plea agreement.

▆ Nor has Upton demonstrated how the state court erred in its application of

of this circuit except as may be provided by Ninth Circuit Rule 36–3.

clearly established federal law when it found that she entered her plea voluntarily. The post-conviction court found that Upton's counsel was simply taking reasonable steps to preserve the sentencing issue for appeal. Although Upton testified that her attorney promised her a successful appeal, the post-conviction court did not credit her testimony. Instead, it concluded that the attorney never made such a promise and, therefore, Upton did not enter the plea expecting a win. This finding is supported by the plea agreement itself, which states that "no officer or agent of any branch of the government nor any lawyer nor any other person has made any promise of any kind to me ... except as stated herein."

Additionally, we note that Upton received the full bargain of the plea agreement. Pursuant to its terms, the government did not seek a death sentence, and dismissed all remaining counts against Upton. Upton was allowed to appeal her sentence, and she in fact challenged the constitutionality of her sentence in the state appellate court. The fact that the Oregon Court of Appeals declined to review her challenge on the merits does not mean that Upton was denied her right to appeal under the plea agreement.

Upton also maintains that the voluntariness of her plea was not "affirmatively disclosed" by the record as required by *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Insofar as Upton's *Boykin* claim is independent of her claim that her plea was not actually voluntary, we agree with the district court's conclusion that the claim is procedurally defaulted.

AFFIRMED.