**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AVISTA CORPORATION; et al.<br><br>Petitioners,<br><br>PACIFIC NORTHWEST GENERATING COOPERATIVE; et al.,<br><br>Intervenors,<br><br>v.<br><br>BONNEVILLE POWER ADMINISTRATION; UNITED STATES DEPARTMENT OF ENERGY,<br><br>Respondents. | Nos. 09-70265, 09-70268, 09-70292, 09-70313, 09-70316, 09-70317, 09-70640<br><br>BPA No. 09PB-13021<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Bonneville Power Administration

Argued and Submitted May 4, 2010
Portland, Oregon

Before: KLEINFELD, BEA and IKUTA, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

These consolidated petitions for review arise out of the latest set of Regional Dialogue contracts offered by the Bonneville Power Administration ("BPA") to its customers. We deny the petition filed by the Public Utility District No. 1 of Grays Harbor County, Washington ("Grays Harbor"), No. 09-70640. We dismiss the other consolidated petitions, Nos. 09-70265, 09-70268, 09-70292, 09-70313, 09-70316, 09-70317, for lack of jurisdiction because those petitions are not ripe.

Grays Harbor voluntarily waived its rights to billing credits and participation in the Residential Exchange Program under sections 5 and 6 of the Pacific Northwest Electric Power Planning and Conservation Act of 1980, 16 U.S.C. §§ 839c–d ("Northwest Power Act"). Waivers of rights are not rendered involuntary "whenever motivated by the . . . desire to accept . . . certainty or probability . . . rather than face a wider range of possibilities" representing unknown better or worse outcomes. *Brady v. United States*, 397 U.S. 742, 751 (1970).

In the Regional Dialogue Contract Record of Decision, the BPA clearly stated that customers were not required to sign the Regional Dialogue Contract if they found its terms unacceptable. Specifically in response to Grays Harbor's comments, the BPA explained:

Customers entitled to participate in billing credits are not being forced to waive their rights to do so.  (The same holds true for the residential exchange.)  BPA is affording customers a choice.  They can sign contracts that are based on tiered rates and, in exchange for the greater pricing certainty afforded by tiered rates, agree not to request billing credits and to participate only in a limited fashion in the residential exchange.  Alternatively, BPA will provide customers contracts that are, as has historically been the case, based on melded cost rates, and that do not require the customer to limit[] its requests for billing credits or the residential exchange.  In essence, customers are being asked to make their own decisions as to the pricing certainty they wish to enjoy.

That the BPA promised to offer an alternative contract, but did not make one immediately available, did not render Grays Harbor's adoption of its Regional Dialogue Contract involuntary.

"[A]bsent some affirmative indication of Congress' intent to preclude waiver, we . . . presume[] that statutory provisions are subject to waiver by voluntary agreement of the parties."  *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995).  "[W]e will not interpret Congress' silence as an implicit rejection of waivability."  *Id.* at 203–04.  Grays Harbor has not pointed to any provisions of sections 5 or 6 of the Northwest Power Act that preclude waiver of benefits as effected in sections 12.1 or 12.2 of its Regional Dialogue Contract.

Section 6(h)(1) of the Northwest Power Act explicitly provides that the BPA need grant billing credits only "[i]f a customer so requests."  16 U.S.C. § 839d(h)(1).

3

Likewise, section 5(c) of the Northwest Power Act requires the BPA to participate in the Residential Exchange Program only when "a Pacific Northwest electric utility offers to sell electric power . . . at the average system cost of that utility's resources in each year." 16 U.S.C. § 839c(c). Neither provision limits a customer's ability to waive the right to request such benefits nor, in the latter case, to agree to a particular formula for determining that customer's "average system cost."

Similarly, Grays Harbor has not established a violation of sections 6(e)(1) or 6(k). Although section 6(e)(1) requires the BPA "to the maximum extent practicable" to "make use of [its] authorities . . . to acquire conservation measures and renewable resources, to implement conservation measures, and to provide credits and technical financial assistance for the development and implementation of such resources and measures," the provision does not define "maximum extent practicable." 16 U.S.C. § 839d(e)(1). Here the BPA has reasonably concluded, supported by a lengthy administrative record, that seeking waivers of requests for billing credits from its customers is consistent with its tiered-rate approach to maximizing conservation efforts. We must defer to the BPA's reasonable interpretation of the statute. *See Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1025 (9th Cir. 2007).

4

Likewise, the obligation under section 6(k) to "distribute[] equitably" various "benefits under this section" does not impose an affirmative obligation on BPA to provide billing credits, nor does it prevent BPA from seeking waivers of the right to request such credits. 16 U.S.C. § 839d(k). Accordingly, we reject Grays Harbor's challenges to the Regional Dialogue Contract, and conclude that sections 12.1 and 12.2 of the Regional Dialogue Contract are not contrary to the Northwest Power Act.

For the reasons stated in *California Energy Resources Conservation & Develop. Comm'n v. Johnson*, 807 F.2d 1456, 1463 (9th Cir. 1987), we dismiss as unripe the other consolidated petitions filed by several Investor Owned Utilities, which challenge provisions of the BPA's Regional Dialogue Contracts that give "Renewable Energy Credits" to the BPA's preference customers at no extra charge, but not to the Investor Owned Utilities in this case. The petitions raise challenges under section 7 of the Northwest Power Act, which defines the BPA's ratemaking authority, but the BPA has not yet set rates, nor has the Federal Energy Regulatory Commission yet approved those rates. Specifically, the Investor Owned Utilities claim that the transfer of Renewable Energy Credits to preference customers conflicts with sections 7(b)(1) and 7(g) of the Northwest Power Act by inequitably allocating benefits, or else making rates not of "general application." 16 U.S.C.

5

§§ 839e(b)(1), (g).  Because the BPA has not yet completed a ratemaking proceeding, and the Investor Owned Utilities are not challenging an actual rate made in violation of section 7, these particular challenges are not ripe for decision.  See *California Energy Resources Conservation & Develop. Comm'n v. Johnson*, 807 F.2d at 1463 ("[a] decision at this juncture would resolve a dispute about hypothetical rates.").  Because the petitions are not ripe for review, there is no "case or controversy" and thus we have no jurisdiction to review the merits of the petitions.  *See City of Seattle v. Johnson*, 813 F.2d 1364 (9th Cir. 1987) (dismissing a challenge to an earlier BPA ruling for lack of jurisdiction because the BPA had not set rates and FERC had not approved them, and thus the controversy was not ripe); *see also Pac. Nw. Generating Co-op. v. Dep't of Energy*, 580 F.3d 792, 805–06 (9th Cir. 2009) (quoting *Pub. Utils. Comm'r of Or. v. BPA*, 767 F.2d 622, 629 (9th Cir.1985), for the proposition that a challenge to methodology in the ratemaking context, dismissed as unripe at this stage, could become reviewable at a later date because "[i]f FERC fails to correct any defects in the methodology [which affected ratesetting], redress is available in the court of appeals," where "any . . . cognizable challenges will be fully reviewable . . . .").

**PETITION No. 09-70640 DENIED; PETITIONS Nos. 09-70265, 09-70268, 09-70292, 09-70313, 09-70316, 09-70317  DISMISSED.**