COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Frucci

BENJAMIN SCOTT LEGG

v.     Record No. 1007-25-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MARCH 24, 2026

FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Anne F. Reed, Judge

(Varinder S. Dhillon; Thomes Weidner IV PLLC, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares,[1] Attorney General; David A. Stock, Senior
Assistant Attorney General, on brief), for appellee.

Upon his guilty pleas, the Circuit Court of the City of Staunton ("trial court") convicted

Benjamin Scott Legg ("Legg") of 5 counts of aggravated sexual battery of a minor less than 13

years old and 5 counts of taking indecent liberties with a minor. The trial court then sentenced

Legg to 50 years' incarceration, with 40 years suspended. On appeal, Legg contends that the

trial court abused its discretion by denying his motion to withdraw his guilty pleas. Finding no

error, we affirm.[2]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

## I. BACKGROUND[3]

Legg was charged with 10 counts of aggravated sexual battery of a minor less than 13 years of age, in violation of Code § 18.2-67.3; 10 counts of abduction with intent to defile, in violation of Code § 18.2-48; and 10 counts of taking indecent liberties with a minor, in violation of Code § 18.2-370.1. Under the terms of a written plea agreement, Legg pleaded guilty to 5 counts of aggravated sexual battery and 5 counts of custodial indecent liberties. In exchange, the Commonwealth agreed to nolle prosequi his remaining 20 charges.

The plea agreement was executed by Legg and the Commonwealth before the trial court on October 3, 2024. Before accepting Legg's pleas of guilty to the various charges, the trial court conducted a colloquy with Legg to ensure that his guilty pleas were entered freely and voluntarily. During the colloquy, Legg confirmed that he understood the charges against him and what the Commonwealth would have to prove in order to convict him. He also confirmed that he had been given enough time to discuss the charges against him, the elements of the charges, and any possible defenses to the charges with his attorney. He also confirmed that after discussing whether to plead guilty or not guilty with his counsel, he decided for himself to plead guilty. He assured the trial court that he was pleading guilty freely and voluntarily because he was, in fact, guilty. Legg also represented to the trial court that although he was taking medications, the medications did not hinder his ability to understand or participate in the proceedings.

Legg further acknowledged that his guilty pleas waived several of his constitutional rights, including his right to a trial by jury, his right to confront any witnesses testifying against him, as

---

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

well as his right to not incriminate himself. Legg also confirmed that no one had threatened or forced him to enter his guilty pleas. Legg represented that he understood that the maximum punishment for the charges, if the sentences ran consecutively, was 125 years' incarceration. He further stated that he was aware that the discretionary sentencing guidelines did not bind the trial court in imposing a sentence. Legg further recognized that his guilty pleas "waive[d] certain rights of appeal." Legg also agreed that he had read and understood the plea agreement and had discussed the plea agreement with his attorney. Finally, Legg confirmed that he understood all the questions asked of him by the trial court and had answered all the trial court's questions truthfully. He also indicated that he had no questions for the trial court.

The trial court found that Legg's guilty pleas had been entered freely and voluntarily and that Legg understood the nature and consequences of his guilty pleas pursuant to the written plea agreement. The Commonwealth then proffered to the trial court that when A.C.[4] was between five and six years old, she occasionally stayed overnight with her aunt and the aunt's fiancé, Legg. On several of these nights, Legg sexually assaulted A.C. by touching her vagina and breasts. When she was in fourth grade, A.C. told her school counselor about the abuse, which led to police becoming involved and A.C. conducting a forensic interview that corroborated her account of the abuse. Legg did not object to the proffer and agreed that the proffered evidence was sufficient to convict him.

Based on Legg's guilty pleas and the Commonwealth's proffer, the trial court accepted his guilty pleas and convicted him of the ten offenses outlined in the written plea agreement. The Commonwealth then moved to nolle prosequi the remaining charges pursuant to the terms of the written plea agreement without objection and the trial court dismissed without prejudice the remaining charges. The trial court then ordered a presentence investigation report and continued for sentencing the ten cases in which Legg was convicted. Although the parties did not dispute the

---

[4] We use initials to protect the victim's privacy.

imposition of sentence pursuant to the terms of the plea agreement, the matter was continued for sentencing because the parties asked for a pre-sentence report and psycho-sexual evaluation concerning the issue of whether Legg could be in the presence of his grandchildren and great-grandchildren despite his convictions for crimes against minors.

Following the hearing, Legg fired his attorney and acquired new counsel. Prior to sentencing, Legg moved to withdraw his guilty pleas. In support, Legg asserted that his guilty pleas were not knowingly and voluntarily entered because he had not been properly medicated as ordered by his doctor when he entered his guilty pleas.[5]

At a hearing on the motion to withdraw the pleas, Dr. Timothy Jana ("Dr. Jana"), a psychiatrist employed at Middle River Regional Jail ("Middle River"), testified that he had previously diagnosed Legg with major depressive disorder and prescribed Legg Prozac and Zyprexa in December of 2023. He further testified that Legg was taking both medications as prescribed until September 27, 2024, when Middle River's supply of Prozac ran low. Legg continued taking Zyprexa but did not receive Prozac again until October 19, 2024. Dr. Jana opined that because of Prozac's long period of effectiveness, about half of the medication Legg ingested a week prior to the October 3, 2024 plea hearing would still have been in his system when he entered his guilty pleas. Dr. Jana further opined that the Prozac remaining in Legg's system, along with the Zyprexa that Legg had continued taking, would have ameliorated his depressive symptoms. Dr. Jana further testified that he had not seen Legg between September 27 and October 3 because Legg had been missing appointments. Dr. Jana was unaware of any psychotic symptoms, episodes, or other recent concerns regarding Legg's mental health. He also opined that it was "unlikely" that a week-long lapse in taking anti-depressant medication "would have a significant effect" on someone taking it.

_____

[5] Legg also claimed that his previous attorney had threatened to withdraw as counsel if he did not accept the plea agreement, but he later withdrew that contention.

Legg testified that he started taking medication in January of 2023 while at Middle River. He stated that he pleaded guilty after not receiving Prozac but "[didn't] know the exact dates" of when he stopped receiving the medication. Legg asserted that he wanted a jury trial because "the allegations simply didn't happen." But Legg acknowledged talking with his wife after the plea hearing and telling her that he pleaded guilty because he was worried about receiving lengthy prison sentences. He also acknowledged that he did not mention anything to her about missing his medication, his appointments, or not thinking clearly. Nor had he reported any concerns about his mental health to jail staff. In fact, he did not remember ever mentioning the lapse in medication to anyone. Legg also conceded that he had begun discussing the plea agreement with his attorney weeks before the interruption in his medication. Legg further agreed that he did not "report any concern about [his] medication" to the trial court at the time of the guilty plea hearing.[6]

The trial court denied Legg's motion to withdraw his guilty pleas. The court noted that the plea colloquy had been "an extended one" because of the question about Legg potentially having contact with his grandchildren and that the trial court "went to special pains to ensure that everyone, especially [Legg], understood what was involved" before the trial court accepted the plea. The trial court noted that it "did not hear any testimony from anyone regarding what negative impact the gap in [Legg's] medication had on [his] mental state and how that might have inhibited [Legg's] abilities at the time of the plea hearing." In addition, the trial court noted that Legg did not object to the Commonwealth's proffer of evidence at the plea hearing and had not offered any defense "beyond what would be a challenge solely" to the victim's credibility and the Commonwealth's other evidence. The trial court then reset the matter for sentencing and subsequently sentenced

---

[6] Legg asserted to the trial court that he was "not saying that he was incompetent or he didn't understand" but that the lack of proper medication "materially affected him in his ability to feel that he could stand up and defend himself."

Legg to 50 years' incarceration, with 40 years suspended, consistent with the plea agreement. Legg appealed.

## II. ANALYSIS

### A. *Standard of Review*

"[W]hether to grant or deny the withdrawal of a plea 'is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" *Commonwealth v. Holland*, 304 Va. 34, 46-47 (2025) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

### B. *The trial court did not err in denying Legg's motion to withdraw his guilty pleas.*

Legg asserts that the trial court erred in denying his motion to withdraw his guilty pleas because "the deprivation of [his] psychotropic medication along with [his] desire to defend himself and proceed to a jury trial is a reasonable basis" for withdrawal of his guilty pleas. We disagree.

Under a "long line of cases" that have "refined the standard" for withdrawing a guilty plea, a "pre-sentencing plea-withdrawal motion should be granted in one of two situations: either when the defendant's guilty plea was 'made involuntarily,' or it was 'entered inadvisedly, if any reasonable ground is offered for going to the jury.'" *Holland*, 304 Va. at 48 (quoting *Brown v. Commonwealth*, 297 Va. 295, 299 (2019)). "Whether the guilty plea was voluntary and counseled are thus central considerations." *Brown*, 297 Va. at 299; *see Brady v. United States*, 397 U.S. 742, 755 (noting that "[t]he standard as to the voluntariness of [a] guilty plea[]" is that it be "entered by one fully aware of the direct consequences" of the plea and that such plea "must stand unless induced by threats . . . [or] misrepresentation"). Legg bears the burden of proving that his guilty plea "was submitted in good faith under an honest mistake of material fact or facts," that he had evidence that showed "a

reasonable defense to be presented to the charge," that the Commonwealth would not suffer "undu[e] prejudice," and that "the motion to withdraw the plea was not filed merely to cause undue delay in the administration of justice or [otherwise represents] bad faith or misconduct by or on behalf of the defendant." *Holland*, 304 Va. at 48-49 (second alteration in original) (quoting *DeLuca v. Commonwealth*, 73 Va. App. 567, 579 (2021), *aff'd per curiam*, 302 Va. 171 (2023)).

A defendant must "show that his motion was made in good faith and premised upon a reasonable basis." *Velazquez v. Commonwealth*, 292 Va. 603, 616 (2016). "A reasonable basis must include a proffer of evidence showing a reasonable basis for contesting guilt." *Brown*, 297 Va. at 299 (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)). Hence, Legg had to show that he had a "reasonable defense" to the charges, either based on a proposition of law or "credible testimony, supported by affidavit." *Williams v. Commonwealth*, 59 Va. App. 238, 249 (2011). "Moreover, the asserted defense must be 'substantive.'" *Brown*, 297 Va. at 301. Bare assertions that a defendant has a defense are not sufficient, and a trial court's "discretion [to grant the motion] will rarely, if ever, be exercised in aid of an attempt to rely upon a merely dilatory or formal defense." *Parris*, 189 Va. at 324-25 (quoting *Early v. Commonwealth*, 86 Va. 921, 924 (1890)).

Here, the record demonstrates that Legg kept taking one of his two required mental health medications as prescribed before his plea hearing while still retaining half of the effectiveness of the other drug. Dr. Jana testified that about half of the Prozac Legg took a week before the plea hearing would still have been in Legg's system. During the plea colloquy, Legg said that his medications did not prevent him from understanding the proceedings. Legg also stated that he understood the plea agreement as well as the trial court's questions and further did not have any questions regarding the plea agreement. Legg told the trial court that he decided for himself whether to plead guilty and was doing so freely and voluntarily because he was in fact guilty of the offenses. Legg also confirmed that no one had threatened or forced him to enter his guilty pleas. And after the hearing,

Legg told his wife that he pleaded guilty to receive a lighter sentence. Legg had also discussed the terms of the plea agreement with his attorney weeks before he temporarily stopped receiving Prozac. The trial court also noted the extensive colloquy with Legg and how it took "special pains" to ensure that Legg knew what was happening during the plea hearing on October 3, 2024. Legg also subsequently admitted that he did not mention anything to his wife, jail staff, or anyone else about any mental health concerns regarding missing his medication, his appointments, or not thinking clearly. The trial court noted that it "did not hear any testimony from anyone" about how Legg not taking one of his medications "might have inhibited [Legg's] abilities at the time of the plea hearing" to understand what was going on at the hearing. There also was no testimony about Legg not being aware of the consequences of his guilty pleas. Accordingly, the trial court reasonably found that Legg's guilty pleas were not entered involuntarily and that Legg did not suffer from a mistake of material facts. *See Holland*, 304 Va. at 49 ("Unless plainly wrong or without evidence to support it, a trial court's finding on the issue of good faith is a finding of fact to which appellate courts defer.").

Furthermore, Legg did not present a reasonable defense to the charges based on principles of law or "credible testimony, supported by affidavit." *Williams*, 59 Va. App. at 249. In fact, Legg only proffered in support of withdrawing his pleas that he denied committing the crimes against A.C. Such a summary assertion merely contradicted the Commonwealth's proffered evidence, which is insufficient to demonstrate that Legg had a reasonable defense. *See, e.g.*, *Ramsey v. Commonwealth*, 65 Va. App. 593, 602 (2015) (holding that defendant's mere proffer of testimony that contradicted the Commonwealth's witness was not a reasonable defense); *Bottoms v. Commonwealth*, 281 Va. 23, 33 (2011) (holding that a motion to withdraw must be "premised upon a reasonable basis that the defendant can present substantive . . . defenses to the charges"). Legg did not directly challenge any of the assertions within the Commonwealth's proffer, submit any

evidence that he had a reasonable defense to the charges, or present any case law in support of such a defense. Rather, he only asserted that he wished to defend himself against the charges in front of a jury, which does not constitute a reasonable defense. *See Coleman v. Commonwealth*, 51 Va. App. 284, 293 (2008) (holding that appellant did not present a "reasonable basis for [a] substantive defense" when he "claimed that he wanted a chance to prove that he was not guilty" at trial); *Booker v. Commonwealth*, 61 Va. App. 323, 337 (2012) (noting that "the bare possibility that a juror or jury would find in favor of appellant at trial, by itself, does not require a trial court to set aside a guilty plea" (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997))). Likewise, his claim that the events did not occur, standing alone, is not the basis for a substantive defense. *See, e.g.*, *Booker*, 61 Va. App. at 335 (noting that the appellant's statement "without elaboration that 'it was others'" who possessed the drugs was insufficient because he "offered no evidence to support anything other than an insubstantial or 'formal' defense"); *Williams*, 59 Va. at 249 (holding that a reasonable defense "is not a defense that is based solely upon a challenge to the credibility of a victim's testimony"). Accordingly, Legg failed to present a reasonable defense to the charges. Hence, the trial court did not abuse its discretion in denying Legg's motion to withdraw his guilty pleas.

## III. CONCLUSION

The record supports the trial court's denial of Legg's motion to withdraw his guilty pleas. Accordingly, we affirm the trial court's judgment.

*Affirmed.*