NOT FOR FULL-TEXT PUBLICATION
File Name: 07a0656n.06
Filed: September 5, 2007

No. 05-2571

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER A. WRIGHT, | ) | |
| | ) | |
|     Petitioner-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| BLAINE LAFLER, WARDEN, | ) | |
| | ) | |
|     Respondent-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; and BECKWITH, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Following a fatal automobile accident, petitioner-appellee Christopher A. Wright was charged with several offenses related to operating a vehicle under the influence of alcohol. Wright pled guilty in Michigan state court and was sentenced to 7 to 15 years imprisonment. Now a state inmate, Wright commenced this action in the federal district court for the Eastern District of Michigan by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that the circumstances of his guilty plea violated his constitutional rights. The district court found that his plea was not knowing and voluntary and granted Wright a conditional writ of habeas corpus on this claim. For the following reasons, we

_____

[*]The Honorable Sandra S. Beckwith, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1

reverse the district court's grant of habeas relief with respect to this claim and deny his petition with respect to his second and third claims.

## I.

Wright's convictions arise from a 1999 traffic accident in which one of his daughters was killed and another daughter, as well as the driver of another car, was seriously injured. Wright acknowledged that he had been drinking and was ultimately charged with one count of operating a motor vehicle under the influence of intoxicating liquor (OUIL) causing death, Mich. Comp. Laws § 257.625(4); two counts of OUIL causing serious injury, Mich. Comp. Laws § 257.625(5); and two counts of second degree child abuse, Mich. Comp. Laws § 750.136b(3).

Wright had several pretrial hearings and conferences regarding his sentence and the possibility of a guilty plea. During this period, Wright and the government discussed various projections for Wright's sentencing guidelines range, including a possible range of 29-57 months. On June 6, 2000, Wright made a motion pursuant to *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), for a sentence of ten months imprisonment.[1] The trial court denied Wright's request but expressed its willingness to sentence Wright "within the guidelines." The court also noted that if Wright did not plead guilty, "there would be plenty for [the court] to go outside of the guidelines."

At Wright's plea hearing on June 13, 2000, the court again confirmed that it agreed only to

---

[1]In *Cobbs*, the Michigan Supreme Court authorized a particular type of plea agreement wherein a judge states the appropriate length of sentence, which is non-binding, but if the defendant subsequently pleads guilty, that defendant retains the absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation. *Cobbs*, 50 N.W.2d at 212. *See Jackson v. Birkett*, No. 04-CV-72836-DT, 2006 WL 3511555, at *1 n.1 (E.D. Mich. Dec. 4, 2006).

sentence Wright within the guidelines range and that the maximum penalty for Wright's crimes was 15 years imprisonment. After being advised of his constitutional rights, Wright pled guilty. Prior to sentencing, the prosecution's case was taken over by another assistant prosecutor who argued for a higher guidelines range than previously discussed. The presentence report (PSR), made available on September 15, 2000, recommended a sentence of 43 to 86 months.

On October 3, 2000, the court sentenced Wright to 7 to 15 years imprisonment. After sentencing, Wright filed a motion to withdraw his guilty plea on the ground that it was not knowingly and voluntarily made. Following a hearing, the trial court denied Wright's motion. The court noted that it had explicitly informed Wright that his guidelines range would be determined by the probation department and concluded that "the *Cobbs* plea in this case was that the Court would sentence Defendant within the guidelines which would be determined by Probation, which is exactly what occurred in this case." Wright appealed to the Michigan Court of Appeals, which denied his claim. The Michigan Supreme Court denied Wright's appeal. Wright then petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. After conducting an evidentiary hearing, the district court found that Wright's plea was not knowing and voluntary and conditionally granted his habeas petition on October 11, 2005. The state filed a timely notice of appeal.

## II.

This court reviews *de novo* a district court's decision to grant or deny a petition for a writ of habeas corpus. *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004). We review the district court's legal conclusions in a habeas proceeding *de novo* and its factual findings for clear error. *Jones v. Jamrog*, 414 F.3d 585, 590 (6th Cir. 2005). Because Wright filed his habeas petition on July 15,

3

2004, and because the Michigan state courts ruled on the merits of his claims, this appeal is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254; *Woodford v. Garceau*, 538 U.S. 202, 210 (2003). Under AEDPA, a federal court may grant a writ of habeas corpus with respect to a claim that was adjudicated on the merits in state court proceedings only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407-08, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

III.

Wright addresses three separate claims in his brief to this court. First, he asserts that the district court correctly granted him habeas relief on his claim that his guilty plea was not knowing and voluntary. Second, he contends that he was coerced into pleading guilty by the trial court's implicit threats to exceed the sentencing guidelines range if he chose not to plead guilty. The district court found no evidence in the record to support Wright's contention that the comment was meant to coerce or intimidate and therefore denied the claim. Third, Wright asserts that the district court

4

erred in finding that his guilty plea was not involuntary on account of ineffective assistance of counsel. Wright offers his second and third claims as alternative grounds for affirmance of the district court's issuance of the writ.[2]

A.

Wright contends that when he pled guilty, he "reasonably believed" that his maximum sentencing range was 29 to 57 months and, if the sentencing judge did not agree to impose a sentence within that range, he would be entitled to withdraw his plea. According to Wright, statements made by the prosecutor and trial court with regard to his potential sentence "materially induced" him to plead guilty and, as a result, his plea was neither knowing nor voluntary and therefore was in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Wright asserts that the state courts' denial of relief on this claim was contrary to and involved an unreasonable application of clearly established federal law as determined by the Supreme Court. The district court agreed and therefore granted Wright a conditional habeas writ on the basis of this claim.

---

[2]Wright did not seek or obtain a certificate of appealability (COA) with regard to either of these last two claims. Our sister circuits have treated differently the issue of whether, in the AEDPA context, a habeas petitioner to whom a writ has been granted on one ground may assert, in opposition to the state's appeal, a ground that the district court has not adopted without a COA on that issue. *Compare Szabo v. Walls*, 313 F.3d 392, 397-98 (7th Cir. 2002) (finding that appellants, but not appellees, are required to obtain a COA under 28 U.S.C. § 2253) *with Rios v. Garcia*, 390 F.3d 1082, 1087 (9th Cir. 2004) (finding that a petitioner may not assert an alternative ground for affirmance unless he or she obtains a COA expressly permitting argument on that ground) *and Grotto v. Herbert*, 316 F.3d 198, 208-09 (2d Cir. 2003) (same). Arguably, this case is closer to *Szabo* because the arguments Wright makes are closely related to the basis for the grant of habeas relief. Because, however, the question was not briefed or argued by the parties, we elect to construe Wright's brief as a request for a COA on these two issues and grant that request, leaving for another case the obligations of a petitioner seeking to argue grounds for affirmance not relied on by the district court.

To support his argument, Wright points to the April 5, 2000, pretrial hearing, where the trial judge asked the prosecutor to identify the applicable sentencing guidelines. The prosecutor responded that he "score[d] them at 29 to 57 months." Wright's counsel disagreed, stating that the applicable range was "considerably less than that." On June 6, 2000, during a hearing on the defense motion for a *Cobbs* agreement, the trial judge asked to be reminded as to the applicable sentencing guidelines. Wright's counsel proposed a range of 19 to 38 months, while the prosecutor iterated that the range should begin at 29 months. At this hearing, the trial court repeatedly confirmed that it would sentence Wright "within the guidelines," but stated that it did not yet know what the guideline range would be. The court then explicitly agreed that the guidelines range would be "based upon what *the probation department* comes back [sic] and their . . . computation." (emphasis added) According to Wright, he nevertheless understood his maximum possible sentence to be 57 months.[3]

To satisfy the dictates of due process, guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among alternatives. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A state court's

---

[3]Wright also contends that the trial court "implicitly" accepted the parties' statements as establishing the upper and lower ranges within which it would sentence Wright, despite stating that the court might go outside the guidelines if Wright did not accept the proposed offer. According to Wright, unless the court accepted the sentencing ranges mentioned by the parties, there would be "no logic" to the court's subsequent statement that "there would be plenty for me to go outside the guidelines." Contrary to Wright's assertion, it would be perfectly consistent for the court to state the possibility that it could go outside the guidelines range; the range would be set by the probation department and the court would remain free to sentence outside this range. Nothing about this statement reveals that the court "implicitly accepted" the ranges mentioned by the parties.

6

determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also* 28 U.S.C. § 2254(e)(1). When a defendant brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding. *Garcia*, 991 F.2d at 326. However, when the transcript is inadequate to demonstrate that a plea was voluntary and intelligent, the presumption of correctness no longer applies. *Id.* at 327.

Here, the district court granted Wright habeas relief, but failed to identify how the Michigan courts ignored or misapplied any clearly established federal law as determined by the Supreme Court. Instead, the court emphasized perceived shortcomings in the trial court's efforts to explain to Wright how his sentence would be determined. According to the district court, the trial court "did not . . . indicate a specific sentencing guidelines range, nor indicate that [it] would agree to sentence petitioner within the sentencing guidelines range as scored by the probation department." This stands in contrast to the trial court's June 6, 2000, statement that it would sentence Wright within the guidelines range, and the guidelines range would be based on the probation department's computation. The district court also found that the terms of the *Cobbs* agreement were ambiguous and that the trial court had an "obligation to take steps to clear up any imprecisions in the agreement," but the court failed to identify how the agreement was ambiguous or the source of such an affirmative obligation. The district court also found that Wright pled guilty "in the belief that his minimum sentence would be no greater than fifty seven months" and noted that this belief was "reasonable" in light of the discussions between the parties concerning the potential guidelines range. The district court did not, however, identify how Wright's "reasonable belief" regarding his

sentence, without more, can create constitutional error such to justify habeas relief. We find no Supreme Court precedent supporting this principle.

Rather than concluding that the Michigan courts' decisions were contrary to decisions of the United States Supreme Court, as required by AEDPA, the district court relied on decisions from other federal appellate courts. *See* 28 U.S.C. § 2254(d)(1). The district court emphasized that "the trial court did not *explicitly* and *unambiguously* explain the terms of the *Cobbs* agreement to the petitioner when accepting this plea." This language, however, is a reference to the court's earlier citation of the First Circuit's opinion in *United States v. Burns*, 160 F.3d 82, 83 (1st Cir. 1998), and that court's finding that significant plea-agreement terms should be stated explicitly and unambiguously so as to preclude their subsequent circumvention by either party. This case has no impact on Wright's habeas claim. Moreover, the *Burns* quotation pertains only to plea agreement terms, not mere statements made in the colloquy at pretrial hearings. The district court also emphasized that the trial court had the opportunity to intercede at any point and clarify that the applicable sentencing guidelines range would ultimately be determined by the probation department—and therefore had the potential of being higher than the sentencing guidelines ranges discussed by the parties—but did not do so. The court cites only *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003), to support this proposition.[4] Again, this Ninth Circuit opinion did not, and should not, factor into the Michigan state courts' sentencing procedures. Like the district court, Wright fails to identify any relevant Supreme Court precedent that is contrary to the trial court's

---

[4]Unlike the situation in this case, *Brown* concerned a prosecutor's clear oral promise during the plea colloquy that the petitioner would be released if she completed half her prison term without disciplinary record and the court's failure to comment on or correct this promise.

decision.[5]

At his pretrial hearing, the court confirmed that it would sentence Wright "within the guidelines," but stated that it did not know what that range would be, as it would be based upon the probation department's computation. At his plea hearing, the court asked Wright if he understood that the maximum penalty to which he was subject was 15 years, and Wright replied that he understood this. The court then stated that "[p]ursuant to *People v. Cobbs* the only thing that I have agreed about your sentence is it will be within the sentencing guidelines," and Wright confirmed that he understood this. Wright also agreed that there was no plea bargain or agreement to reduce the charge against him. We find nothing in the record to indicate that the prosecutor made any promise to Wright or agreement with him that would create a problem under *Brady* or any other Supreme Court precedent. We therefore find that the district court erred in granting Wright habeas relief on the basis of this claim.

B.

Wright next asserts that the district court coerced him into pleading guilty by implicitly

---

[5]Wright relies on *Brady* for the proposition that a defendant's decision to plead guilty must not have been "induced by . . . misrepresentation." 397 U.S. at 748 (internal quotation marks omitted). This passage, which is also cited by the district court, actually reads: "(A) plea of guilty . . . must stand unless induced by . . . misrepresentation (including unfulfilled or unfillable *promises*) . . . ." *Id.* (emphasis added) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957)). Neither Wright nor the district court identifies any *promise* that the prosecutor (or the court) failed to fulfill. Instead, both reference only preliminary sentencing calculations by the parties. Accordingly, *Brady* is inapposite. Similarly, Wright references *Santobello v. New York*, 404 U.S. 257 (1971), but provides only a quotation and no explanation for how *Santobello* is relevant to his case. The cited *Santobello* passage provides that "when a plea rests in any significant degree *on a promise or agreement* of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. (emphasis added). Here, no actual promise or agreement was made and as a consequence *Santobello* has no impact.

threatening to sentence him above the guidelines range if he did not plead guilty. Wright's argument rests on a single statement by the trial court: after agreeing to sentence Wright within the to-be-determined guidelines range should he plead guilty, the court noted that otherwise "there would be plenty for me to go outside the guidelines." As found by the Michigan Court of Appeals, this comment was only a response to Wright's argument that he could be sentenced beneath the guidelines range – it was not a coercive attempt to secure a guilty plea. Similarly, the district court found that, in light of the context in which the statement was made, the judge's comment "merely appeared to be an attempt to inform petitioner of the possible consequences of proceeding with a full trial." This conclusion was correct. Wright's efforts to cast the comment as coercive or otherwise insidious are without merit. We therefore deny this claim.

C.

Wright also asserts that his guilty plea was involuntary because his attorney gave him incorrect advice about his parole eligibility. Wright contends that both before and after he pled guilty he was told by his attorney that he would serve only a portion of the sentence imposed by the trial court. As a result, his plea was neither knowing nor voluntary and therefore in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. At the district court's evidentiary hearing, both Wright and his former girlfriend testified that his trial counsel had advised them that Wright would not have to serve his entire minimum sentence as a result of "good time credits" and prison overcrowding. Wright's trial counsel testified that, contrary to Wright's assertions, he had advised Wright that "whatever the sentence was he was going to do the minimum sentence." Further, he denied ever telling Wright that there was any possibility of early release due to prison overcrowding.

The familiar *Strickland v. Washington*, 466 U.S. 668 (1984), two-part test to establish ineffective assistance of counsel applies to challenges to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Under *Strickland*, a defendant is deprived of the constitutional right to counsel where "counsel's performance (1) 'fell below an objective standard of reasonableness' and (2) was prejudicial, i.e., 'but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005). To satisfy the prejudice requirement in the context of a guilty plea, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty but instead would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In evaluating an ineffective assistance of counsel claim, we "strongly presume[]" counsel to have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Wright has failed to demonstrate a reasonable probability that, but for his counsel's purportedly flawed advice, he would not have pled guilty.[6] The evidence against Wright was substantial: a witness saw Wright's car slam into the back of a car parked at a stop light; two police officers who responded to the wreck reported smelling a heavy odor of alcohol coming from Wright; Wright admitted at the scene of the accident that he had been drinking; Wright's speech was "very slurred" at the scene; there was an empty beer bottle on the floor of Wright's car; Wright's blood alcohol level was tested twice at the hospital, once reading .19 and later reading .13. Moreover,

---

[6]Because Wright has failed to satisfy the prejudice requirement for his ineffective assistance claim, we need not determine whether the performance of his counsel fell below an objective standard of reasonableness.

11

Wright fails to identify any alternative course of action that he would have chosen had he received different advice from his counsel. *See Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006) (noting that the defendant's proposed alternative strategy to pleading guilty to a different charge would require speculation as to the outcome and likely not have benefitted the defendant). Wright simply contends that he "would not have pled guilty if he had received accurate legal advice," but there exists no alternative other than proceeding to trial where, in light of the overwhelming evidence against him, he almost certainly would have been found guilty.

Wright's counsel made a good faith effort to inform Wright of his potential sentence, and Wright's counsel testified that Wright expressed his intent to plead guilty before there was any discussion of his guidelines range or possible sentence. *See id*. ("A defendant challenging his attorney's conduct during plea bargaining must show that counsel did not attempt to learn the facts of the case and failed to make a good faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty." (internal quotation marks omitted)). We therefore deny Wright habeas relief on the basis of this claim.

## IV.

For the foregoing reasons, we reverse the district court's grant of Wright's petition for habeas corpus with respect to his first claim and deny his petition with respect to his second and third claims.