File Name: 09a0496n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 07-2223**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MICHAEL BROWN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| KENNETH MCKEE, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**FILED**
**Jul 15, 2009**
LEONARD GREEN, Clerk

**BEFORE: COLE and ROGERS, Circuit Judges, and GRAHAM, District Judge.**[*]

**ROGERS, Circuit Judge.** Michael Brown appeals the denial of his habeas petition, arguing that his plea of guilty to armed robbery was not voluntarily and knowingly made. Brown alleges that he pled guilty under the belief that the plea agreement required the court to sentence him to a maximum of fourteen years in prison or else allow him to withdraw his plea. The court sentenced Brown to a range of fourteen to thirty years and did not allow Brown to withdraw his plea. Although the sentencing transcript makes clear that both the attorneys and the court understood that the sentence "cap" under discussion referred to the minimum sentence under the Michigan Sentencing Guidelines, the record does not make clear that Brown understood this distinction. We therefore remand this case to the district court for an evidentiary hearing to determine whether evidence

---

[*]The Honorable James L. Graham, United States Senior District Judge for the Southern District of Ohio, sitting by designation.

outside the record alerted Brown to the fact that the "cap" in question was a cap of his minimum, rather than his maximum, sentence.

## I.

Brown's guilty plea arose from an incident in which he robbed a video store while under the influence of narcotics. Brown, who had been released from a short prison term less than twenty-four hours before, walked into the store in plain view and falsely led the cashiers to believe that he had a gun concealed underneath his jacket. Brown's case proceeded to trial, but the prosecutor and defense attorney brokered a plea agreement the first day during the lunch recess.

The prosecutor explained to the court on the record that the parties had agreed to a mid-range guidelines sentence. Specifically, he said, "[W]e're going to cap any potential sentence for the defendant at 14 years." The prosecutor then added, "I understand the Court does not have to follow that, but if the Court chose to sentence higher, then it would allow the defendant to withdraw his plea." Defense counsel confirmed that the prosecutor had correctly described the agreement. Defense counsel elaborated, "In exchange for that plea, the People are agreeing to recommend to the Court a cap of not more than 14 years, this being roughly the mid-point of what was believed to be the appropriate guidelines sentence in this case." He then reiterated that Brown would be permitted to withdraw his plea and proceed to a jury trial if the court sentenced above the agreed-upon cap.

Before accepting the plea, the court questioned Brown about his understanding of the plea agreement. The court asked whether Brown understood that he was pleading guilty to a crime that

carried a maximum penalty of life in prison. Brown responded, "I pray to God I don't receive that."

The court explained its understanding of the plea as follows:

> COURT: Now it's my understanding, Mr. Brown, that the plea agreement that's been entered into between you and your attorney and the prosecutor's office in this case is the prosecutor is recommending that the Court sentence you to no more than 14 years in prison, the maximum-minimum being no more than 14 years. You understand that?
>
> BROWN: Yes.
>
> COURT: Okay. Do you understand that sentencing is the exclusive province of the Court, and I'm not obligated to follow that recommendation if I choose not to do so? Do you understand that?
>
> BROWN: Yes.
>
> COURT: Okay. However, since it is a consideration for your plea, if I choose not to follow that recommendation, then I would afford you an opportunity to withdraw your plea at that time if you so desire; do you understand that, sir?
>
> BROWN: Yeah.

Brown's sentencing hearing took place two months later. The court sentenced Brown to a term of fourteen to thirty years and adjourned the proceedings without requesting comment from either party.

Brown began his efforts to obtain resentencing within the week by requesting a copy of the plea transcript. Shortly thereafter, he requested, and was denied, appellate counsel. Throughout the process of exhausting his state remedies, Brown continued to maintain that at the time he entered his plea he understood the plea agreement to require a maximum sentence of no more than fourteen years. He advanced two arguments: first, that the court violated the plea agreement by sentencing

him outside the allowable range and not giving him an opportunity to withdraw the plea; second, that his plea was not voluntary or knowing because he entered it under the belief that his maximum exposure was fourteen years. In the terse opinions that the state court issued in the course of Brown's appeals, the state concluded that the sentence conformed to the agreement. The state did not address Brown's due-process claim that his plea was not knowing and voluntary.

Brown sought federal habeas relief in the district court raising both his claim that the trial court sentenced him outside the terms of the plea agreement and his claim that the plea violated due process because it was not voluntary, knowing, or intelligent. Applying deference under the Antiterrorism and Effective Death Penalty Act, the district court denied both claims. *Brown v. McKee*, No. 04-10080, 2007 WL 2421557, at *1 (E.D. Mich. Aug. 27, 2007). The court reasoned that the agreement, taken in context, was for a minimum sentence of fourteen years. *Id.* at *7. The district court also reasoned that the state court opinions denying relief contained an "implicit conclusion" that the plea was voluntary and knowing and that such conclusion was not objectively unreasonable. *Id.*

## II.

To the extent that Brown's claim that the trial judge breached the plea agreement by imposing a maximum sentence in excess of fourteen years can be construed as raising issues of federal law, the state court's determination that the sentence complied with the agreement is entitled to deference under AEDPA. The terms of the plea are debatable, and we therefore defer to the state court's determination.

Viewed in the context of the Michigan guidelines, Brown's sentence complied with the terms of his plea agreement. Michigan follows a practice of indeterminate sentencing in which every defendant is sentenced to a range of years. *People v. Drohan*, 715 N.W.2d 778, 789 (Mich. 2006). Michigan's sentencing guidelines assist the trial court in setting the low end of the range. *Id.* at 789-90. The high end of the indeterminate sentence comes from the specific criminal statute. *Id.* at 790. The parole board determines the actual time served. *Id.* at 791. Therefore, any sentence determined by consulting the guidelines would presumptively be a minimum sentence. Indeed, the record clearly demonstrates that both of the attorneys and the court understood the "cap" to refer to the low end of an indeterminate sentence.

The Michigan state courts did not act contrary to any clearly established federal law by determining that Brown's sentence complied with the agreement. Brown cites *Santobello v. New York*, 404 U.S. 257 (1971), but that case is not on point. That case established that a due process violation occurs when a prosecutor induces a guilty plea through promises and then fails to fulfill the promises. *Id.* at 262. As the district court properly noted, *Santobello* applies to a breach by the prosecutor, not by the trial court. While one could argue for an extension of *Santobello*'s logic, any such extension would not constitute clearly established federal law for purposes of this habeas petition. Brown also argues from general principles of contract interpretation that his understanding of the agreement should govern. While these arguments may be based in legitimate contract law, none of the law Brown cites constitutes clearly established federal law as interpreted by the Supreme

Court. Neither does the state-court decision constitute an unreasonable determination of the facts. In such a case, AEDPA requires deference. *See* 28 U.S.C. § 2254(d).

## III.

However, because the record in this case does not demonstrate that Brown's plea was voluntary and knowing, the record requires further development. Although Brown's subjective (mis)understanding of the plea agreement does not establish his claim based on breach of the plea agreement, it does call into question whether his guilty plea met the due-process requirement that he understand the likely consequences of the plea. Because the state court did not decide the due process claim, we review this claim de novo. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Although the district court regarded the state courts' decisions denying relief as implicitly holding that Brown's plea was knowing and voluntary, *see Brown*, 2007 WL 2421557, at \*7, none of the state-court holdings addressed Brown's properly preserved due-process claim. AEDPA deference is therefore not applicable.

The record supports a conclusion that Brown actually, and with good reason, understood the terms of the agreement to require that he receive either a maximum sentence of fourteen years or an opportunity to withdraw the plea. In the discussion of the agreement contained in the record, the prosecutor referred to "cap[ping] any potential sentence for the defendant at 14 years," and defense counsel said that "the People are agreeing to recommend to the Court a cap of not more than 14 years." The trial court's single reference to the "maximum-minimum" is the only statement on the record that could have indicated to someone unfamiliar with Michigan's sentencing policy that

anything other than the maximum sentence was under discussion. Given the lengthy discussion of the fourteen-year cap, that single reference to a "maximum-minimum" would not necessarily cause Brown to question his understanding of the plea agreement.

Where a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). In order to be a valid waiver of constitutional rights, a guilty plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). One consequence of which the defendant must be aware is the maximum sentence exposure. *See Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991). In *Hart*, the district court and the attorneys, who were themselves misinformed, actively gave the defendant false information about his maximum sentence. *Id.* at 258-59. In the instant case, the attorneys and court were not misinformed, but the record does not make clear that they conveyed their professional understanding of the agreement's terms to Brown.

In a usual case, the state meets its burden of proving that the plea was voluntary and knowing by presenting a record of the plea colloquy; and extensive questioning on the record by the court, as occurred here, would be sufficient. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *Roddy v. Black*, 516 F.2d 1380, 1384 (6th Cir. 1975). However this case is complicated by several factors: Michigan's peculiar indeterminate sentencing structure, the defendant's apparent lack of familiarity with that structure, and the use of the ambiguous term "cap." The fact that the parties finalized this agreement over a lunch recess and did not memorialize it in writing both increases the possibility

that Brown misunderstood the terms and impairs this court's ability to determine otherwise from a paper record. Evaluating the validity of Brown's plea therefore requires going beyond what is in the present record to determine whether Brown sufficiently understood the terms of the plea agreement.

The record at present does not establish that Brown had outside experience that would have allowed him to understand the plea agreement based only on the explanations in the record. The district court stated that Brown had three prior felony convictions that were subject to Michigan's indeterminate sentencing law. *Brown*, 2007 WL 2421557, at 7. This assertion was not accurate. All of the prior felony convictions discussed in the record occurred in Illinois. Michigan points to defense counsel's statement that Brown had spent most of his adult life in the Illinois and Michigan prison systems as evidence of prior Michigan convictions. The record however suggests that counsel's statement likely referred to the 498 days Brown spent in Michigan prison awaiting trial for the instant offense, not to any prior convictions.

The record also does not establish whether conversations took place off the record sufficient to convey to Brown an accurate understanding of the agreement. Michigan points to the sentencing court's explanation of the statutory maximum life sentence and Brown's statement that "I pray to God I don't receive that" as evidence that Brown knew he faced exposure to a maximum of more than fourteen years. But the court's explanation of the maximum sentence and Brown's response are consistent with Brown's purported understanding of the agreement. The attorneys and the court made clear, and Brown appeared to understand, that the court was not bound to sentence according to the terms of the agreement. However, Brown may reasonably have believed that he would be able

to withdraw his plea should the court sentence him to life in prison or some other term of years exceeding fourteen. It is conceivable that Brown would say he hoped not to receive a life sentence even if he believed that such a sentence would give him the right to withdraw the plea; Brown presumably entered the plea agreement because he preferred its terms to the alternative of trial.

A finding that the record fails to establish that Brown's plea was voluntary and knowing does not automatically entitle Brown to habeas relief, because the state may yet prove that Brown understood the nature of the plea's terms through evidence extrinsic to the transcript of the plea acceptance. *See Roddy*, 516 F.2d at 1384. In other cases involving inadequate records, evidentiary hearings in the district court have proved helpful. *See id.* at 1385. No such hearing occurred here.

We therefore REMAND this case to the district court for proceedings consistent with this opinion.