**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0016n.06

**No. 09-1310**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Jan 07, 2011
LEONARD GREEN, Clerk**

| | | |
|---|---|---|
| BENJAMIN CARETHERS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| HUGH WOLFENBARGER, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: KENNEDY, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Petitioner Benjamin Carethers claims that his no-contest plea was not knowing and intelligent because the trial court failed to inform him of what Michigan's sentencing guidelines meant, how they were calculated, and that they would not affect his maximum sentence. The district court denied Carethers' petition for habeas corpus, and Carethers appealed. Because the state courts did not unreasonably apply clearly established federal law in finding Carethers' plea to be voluntary, knowing, and intelligent, the district court correctly denied Carethers' petition.

Under Michigan's indeterminate-sentencing system, the trial court sentences a defendant to both minimum and maximum prison terms. The maximum term is set by Michigan statutes, and Michigan's statutory guidelines provide ranges of sentences for the minimum term. Under certain circumstances, the trial court is allowed to depart from the guidelines in setting the minimum terms. A parole board determines the defendant's actual time served within the minimum and maximum

sentences.  *See* MICH. COMP. LAWS §§ 777.1-777.69; *People v. Drohan*, 715 N.W.2d 778, 789-90 (Mich. 2006).

On July 5, 2006, Carethers pled no contest to second-degree criminal sexual conduct before a Michigan trial court.  During the course of the plea hearing, the trial court engaged in a colloquy with Carethers about his plea, its consequences, and his potential sentence.  The trial court asked Carethers if he was entering a plea of no contest to the charge of second-degree criminal sexual conduct, and Carethers said that he was.  Carethers confirmed that he had "discussed the matter of the plea" with his attorney, that he understood the nature of the criminal charge, and stated that he was "freely and voluntarily" pleading no contest to the charge and that he was doing so at his own choice.  The trial court also asked Carethers if he understood that the maximum penalty for his crime was fifteen years and that this could be enhanced to life because of his habitual-offender status; Carethers said that he did.  The prosecutor and Carethers' attorney said they had not reached a sentencing agreement other than "[g]uidelines."  The trial court confirmed that it would sentence Carethers "within guidelines," found Carethers' plea to be understandingly made, voluntary, and accurate, and accepted the plea.  The trial court later sentenced Carethers to a minimum sentence of sixteen years and a maximum sentence of forty years.  The sixteen-year minimum was within the guidelines as increased because of Carethers' habitual-offender status.

Carethers filed a motion to withdraw his no-contest plea.  He argued that his plea was not intelligent, voluntary, and understanding because the guidelines were not disclosed to him.  He also argued that his attorney provided ineffective assistance of counsel for "fail[ing] to notice the record absence of the guidelines" (Carethers later explained in his habeas petition that by this he meant that

"counsel did not object to the taking of the plea notwithstanding the absence of guideline information known to Mr. Carethers."). The trial court denied the motion from the bench without issuing a written opinion, and Carethers filed an application for leave to appeal to the Michigan Court of Appeals. The Michigan Court of Appeals summarily denied the application "for lack of merit in the grounds presented." Carethers then filed an application for leave to appeal to the Michigan Supreme Court, but that court summarily denied the application because it was not persuaded that the questions presented should be reviewed.

Finally, Carethers filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Michigan. Carethers' claims were the same two he originally presented in his motion to withdraw his plea: (1) that his plea was not intelligent, voluntary, and understanding; and (2) that he received ineffective assistance of counsel when his counsel "failed to notice the record absence of the guidelines." Carethers argued that "[a]t no time were the guidelines shown, not in the plea transcript or the sentencing transcript," that "[t]here is no evidence that Mr. Carethers learned of the guidelines from the pre-sentence report," and "[s]ince that was an essential part of the plea, its omission precluded Mr. Carethers from entering an intelligent, voluntary and understanding plea."

The district court denied Carethers' petition. The district court concluded that Carethers' testimony at the plea hearing indicated that his no-contest plea was knowing, intelligent, and voluntary. The district court based this conclusion on the aforementioned statements from the plea colloquy and on the fact that Carethers had prior experience with the criminal justice system, that there was no evidence of any mental or psychological problems impairing his ability to understand

the criminal proceedings or nature of the plea, and that he was represented by counsel with whom he conferred during the plea process. The district court also concluded that Carethers' counsel did not provide ineffective assistance by "fail[ing] to notice the record absence of the guidelines," and held that any claim that the trial court should have allowed Carethers to withdraw his no-contest plea was not cognizable upon federal habeas review. This court issued a certificate of appealability on the two claims Carethers presented in his habeas petition, and this appeal followed.

The state courts denied Carethers' motion to withdraw his no-contest plea, and in doing so, they determined that his plea was voluntary, knowing, and intelligent. This was not an unreasonable application of clearly established federal law, and the district court therefore correctly denied Carethers' petition for a writ of habeas corpus. In this case, there was no reasoned state-court opinion (the state courts rejected Carethers' arguments without discussing the merits), so the court must "conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (applying 28 U.S.C. § 2254(d)).

The relevant circumstances surrounding Carethers' plea indicate that the state court did not unreasonably apply federal law in concluding that his plea was voluntary, knowing, and intelligent. To be valid, Carethers' plea "must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *See Brady v. United States*, 397 U.S. 742, 748 (1970). Moreover, "[t]he voluntariness of [the] plea can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The transcript of the plea hearing reveals,

given our deference to the state courts' decisions, that the trial court engaged in an adequate colloquy with Carethers concerning the nature and consequences of his no-contest plea. The trial court asked Carethers if he was entering a plea of no contest to the charge of second-degree criminal sexual conduct, and Carethers said that he was. Carethers confirmed that he had "discussed the matter of the plea" with his attorney and that he understood the nature of the criminal charge. Carethers also said that he was "freely and voluntarily" pleading no contest to the charge and that he was doing so at his own choice. The trial court confirmed that Carethers understood that by pleading no contest, he would be surrendering certain rights, like the right to a trial, the right to testify, the right to call and question witnesses, and the right to have his guilt proved beyond a reasonable doubt. This suggests Carethers' awareness of the nature and consequences of his no-contest plea.

While the Warden has the burden to show that Carethers' no-contest plea was voluntary and intelligent, "the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The transcript here records the trial court's explicit finding that Carethers' plea was "understandingly made, that it is voluntary and accurate." Because the plea hearing transcript is adequate to show that Carethers' plea was voluntary, knowing, and intelligent under the applicable level of deference, this finding is accorded a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Garcia*, 991 F.2d at 326-27.

Carethers attempts to rebut this presumption by arguing that his case is very similar to *Brown v. McKee*, 340 F. App'x 254 (6th Cir. 2009). *Brown* is not as on point as Carethers suggests. In *Brown*, the parties reached a sentencing agreement under which they agreed to a "mid-range guidelines sentence." *Id.* at 255. At the plea hearing, the prosecutor explained that "'[W]e're going

5

to cap any potential sentence for the defendant at 14 years,'" and added, "'I understand the Court does not have to follow that, but if the Court chose to sentence higher, then it would allow the defendant to withdraw his plea.'" *Id.* (alteration in original). The defendant's attorney confirmed this understanding. He stated that the prosecutor was "'recommend[ing] to the Court a cap of not more than 14 years, this being roughly the mid-point of what was believed to be the appropriate guidelines sentence in this case,'" and that the defendant "would be permitted to withdraw his plea and proceed to a jury trial if the court sentenced above the agreed-upon cap." *Id.* The trial court then asked the defendant if he understood that his crime carried a maximum penalty of life, to which he replied, "'I pray to God I don't receive that.'" *Id.* at 255-56. The court told the defendant that "'the prosecutor is recommending that the Court sentence you to no more than 14 years in prison, the maximum-minimum being no more than 14 years,'" that "'I'm not obligated to follow that recommendation if I choose not to do so,'" and that "'if I choose not to follow that recommendation, then I would afford you an opportunity to withdraw your plea at that time if you so desire.'" *Id.* at 256. The defendant said he understood. *Id.* The trial court sentenced the defendant to fourteen-to-thirty years and did not ask whether he wanted to withdraw his plea. *Id.*

On habeas review, we held that the record did not demonstrate that the defendant's plea was knowing and intelligent, and remanded to the district court for an evidentiary hearing. *Id.* at 257, 259. "The record supports a conclusion that Brown actually, and with good reason, understood the terms of the agreement to require that he receive either a maximum sentence of fourteen years or an opportunity to withdraw the plea." *Id.* at 257. The court reasoned this because the parties had a lengthy discussion in which they described the recommended sentence as a fourteen-year "cap," and

on the fact that the trial court made only the single, cryptic "maximum-minimum" comment from which the defendant might possibly have realized that the "cap" did not refer to his maximum possible sentence. In light of this, "the court's explanation of the maximum sentence and Brown's response are consistent with Brown's purported understanding of the agreement," and "Brown may reasonably have believed that he would be able to withdraw his plea should the court sentence him to life in prison or some other term of years exceeding fourteen." *Id.* at 258-59.

*Brown* thus concerned a quite reasonable misunderstanding over the precise circumstances under which a defendant would be allowed to withdraw a plea. This misunderstanding was caused by the parties' description of the recommended sentence as a "cap," a term most naturally understood to mean recommended maximum. Though "cap" actually referred to recommended *minimum*, Brown's failure to interpret it this way was entirely understandable. When the trial court then advised Brown that he would be able to withdraw his plea if the court did not follow this recommendation, Brown could reasonably have concluded that he could withdraw his plea if the court sentenced him to more than the recommended fourteen-year maximum sentence. Indeed, the trial court probably compounded, rather than mitigated, Brown's confusion by telling him that "'the prosecutor is recommending that the Court sentence you to no more than 14 years in prison, the maximum-minimum being no more than 14 years.'" *Id.* at 256. Given the inherently confusing nature of the plea colloquy, Brown's mistaken belief about whether he would be able to withdraw his plea was understandable, rendering that plea involuntary and unknowing.

Carethers' plea colloquy is not analogous to that in *Brown*. Carethers argues that he "was not effectively advised of any aspect of his potential sentence," and that the trial court "did not even

7

adequately ensure that Mr. Carethers was aware of the maximum sentence that could be imposed." This does not fairly reflect what was said at the plea hearing. Here, unlike in *Brown*, the trial court and the parties sufficiently and correctly informed Carethers of the maximum potential length of his sentence. The trial court told Carethers that his maximum potential sentence was fifteen years, which could be enhanced to life. The trial court specifically confirmed that Carethers understood that his maximum sentence could be this high. "Maximum penalty" means just what it says—that this is the highest potential sentence Carethers could receive. The trial court later said it would sentence Carethers "within guidelines," stated that "that's part of the plea," and confirmed that Carethers had "discussed the matter of the plea" with his attorney. While the trial court did not explicitly tell Carethers that the guidelines sentence represented a minimum and not a maximum sentence, this alleged oversight does not render the state courts' determination an unreasonable application of clearly established federal law.

The constitutional sufficiency of Carethers' plea colloquy for ensuring that his plea was voluntary, knowing, and intelligent is supported by *Wright v. Lafler*, 247 F. App'x 701 (6th Cir. 2007). In *Wright*, the trial court told the defendant Wright at his plea hearing that it would sentence him "'within the guidelines,'" but that it did not know what the guidelines range would be because the probation department would determine it. *Id.* at 705. The trial court also asked Wright if he understood that the maximum penalty to which he was subject was fifteen years, and Wright replied that he did. *Id.* at 707. Prior to the plea hearing, Wright and the government had discussed various guidelines sentencing ranges, including twenty-nine to fifty-seven months. *Id.* at 703. Wright pled guilty, and the trial court sentenced him to seven to fifteen years. *Id.*

Wright filed a habeas petition. Wright argued that when he pled guilty, "he 'reasonably believed' that his maximum sentencing range was 29 to 57 months and, if the sentencing judge did not agree to impose a sentence within that range, he would be entitled to withdraw his plea." *Id.* at 705. He contended that "statements made by the prosecutor and trial court with regard to his potential sentence 'materially induced' him to plead guilty and, as a result, his plea was neither knowing nor voluntary." *Id.* The court rejected these arguments. The court stressed that the trial court had informed Wright that he would be sentenced "'within the guidelines,'" that it said it did not know what the range would be and that the probation office would determine this, and that it had specifically confirmed that Wright knew his maximum possible sentence was fifteen years. *Id.* at 707. In light of these facts, habeas relief was not warranted on Wright's claim that his plea was not voluntary and knowing. *See id.*

*Wright* suggests we should reject Carethers' argument that his plea was not voluntary and knowing. In both cases, the trial court informed the defendants only that they would be sentenced to an unspecified length of time "within guidelines," while separately informing them of their maximum possible sentences. In both cases, the trial court did not explicitly clarify what the guidelines were or that the guidelines would affect only the defendants' minimum sentences and not their maximum possible sentences. In sum, the defendants' principal argument in both of these cases is essentially this: that the trial court led them to believe that their maximum possible sentences would be determined by the guidelines, whatever the applicable guidelines range turned out to be. We rejected the argument in *Wright*.

9

Carethers argues that *Wright* is distinguishable because "in *Wright*, the record established that the petitioner was informed of the maximum sentence, understood that the guidelines affected only his minimum sentence, and was told by the trial court that he would be sentenced within the guidelines however calculated, but believed that his guideline range was 29 to 57 months." Even assuming this is so, *Wright*'s inapplicability would not affect our conclusion.

In reaching our conclusion, we do not rely on the Warden's argument that a "Statement of Services Rendered" by Carethers' trial counsel to the district court, a document not in the record, provides evidence that Carethers' counsel did review the substance of the guidelines with him. We also do not rely upon the Warden's argument that Carethers has "extensive experience and familiarity with Michigan's criminal justice system."

We do not decide whether Carethers' counsel provided ineffective assistance when he "failed to notice the record absence" of the guidelines. Although the court granted a certificate of appealability on this issue, Carethers did not address it in any way in his appellate briefs. He has therefore abandoned this issue on appeal. *See Smith v. Straub*, No. 99-2235, 2000 WL 1679445, at *1 (6th Cir. Oct. 31, 2000) (explaining that appellant abandons issue by failing to brief it on appeal). Similarly, we do not decide whether Carethers' counsel provided ineffective assistance by failing to ensure that Carethers knew the likely consequences of his plea. Carethers specifically requested that the court consider only the issue of whether his no-contest plea was voluntary, knowing, and intelligent, because the success of his ineffective-assistance claim would hinge on the success of his voluntariness claim. In addition, the court did not grant a certificate of appealability on this issue.

10

It is therefore not properly before the court on appeal. *See, e.g.*, *James v. Hurley*, 93 F. App'x 744, 746 (6th Cir. 2004); *Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001).

For these reasons, the judgment of the district court denying Carethers' petition for a writ of habeas corpus is affirmed.