NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1134n.06

No. 10-2216

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 02, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LAVELLE MARKS, | ) | |
| Petitioner - Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES |
| v. | ) ) | DISTRICT COURT FOR THE  EASTERN DISTRICT OF MICHIGAN |
| SUSAN DAVIS, | ) ) | |
| Respondent - Appellee. | ) ) | OPINION |

**Before:   COLE and KETHLEDGE, Circuit Judges, and THAPAR,** District Judge.

**AMUL R. THAPAR, District Judge.**  Lavelle Marks pled guilty in Michigan state court to murdering another man.  The trial court sentenced Marks to 35 to 70 years in prison, which apparently was higher than he expected.  Unhappy with this outcome, Marks moved to withdraw his plea arguing that his plea was neither knowing nor voluntary.  He claims that his attorney promised him that if he pled guilty he would face a much shorter sentence than the one he received.  The evidence does not support Marks's assertion.  We affirm.

**I.**

Marks and his co-defendant, Glenn Turner, forced Mark Carter to accompany them to Marks's apartment.  Once there, Marks and Turner subjected Carter to several hours of beatings that

---

*Hon. Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

ultimately resulted in Carter's death. Prosecutors thereafter charged Marks and Turner with murder, kidnapping, and extortion.

The government eventually dropped the kidnapping and extortion charges in exchange for Marks's guilty plea to second-degree murder. As part of the deal, the government agreed to have Marks sentenced as a non-habitual offender. The trial court sentenced Marks to 35 to 70 years in prison. After sentencing, Marks moved to withdraw his plea on the grounds that it was unknowing and involuntary. Marks claims that he pled guilty because his attorney told him that his plea deal guaranteed him a sentence of 22 ½ to 37 ½ years. The trial court denied Marks's motion to withdraw his plea. The Michigan Court of Appeals affirmed, and the Michigan Supreme Court denied Marks's application for a discretionary appeal.

Marks filed a timely federal habeas corpus petition in the Eastern District of Michigan. The district court denied Marks's petition. We granted Marks a certificate of appealability to determine whether his plea was knowing and voluntary.

## II.

On appeal, Marks argues that his plea was involuntary as a result of his attorney's promise that he would receive a sentence between 22 ½ and 37 ½ years. He also claims that both the district court and the state courts erred in relying upon the plea transcript and not the evidence he presented.

At argument, Marks conceded that, after *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011), a state court's summary denial of a petitioner's claim is the equivalent of a ruling on the merits. Thus, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) applies, meaning Marks must demonstrate that the state court's decision was "contrary to, or [] an unreasonable application"

of Supreme Court precedent, or that the state court unreasonably determined material facts. 28 U.S.C. § 2254(d).

Marks argues that Michigan violated his "constitutional rights" by accepting a plea that was neither knowing nor voluntary. For a plea to be knowing and voluntary, a defendant must be aware of the consequences of his plea, including the "actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Brady v. United States*, 397 U.S. 742, 755 (1970) (quotation omitted). Marks bases his argument that his plea was neither knowing nor voluntary on a single line in his plea transcript. After the prosecutor and Marks's counsel summarized the terms of Marks's plea agreement, the trial court asked Marks whether he was promised anything additional for his guilty plea. Marks stated that "nobody really promised me nothing, but within the guidelines, 22½ to 37½, and they drop the other charges and drop the Habitual, that's it." This statement, Marks contends, demonstrates that his counsel incorrectly told him his plea deal was for 22 ½ to 37 ½ years in prison.

But there is a more plausible explanation for Marks's statement. Michigan's Sentencing Guidelines, unlike the federal sentencing guidelines, only provide for a minimum sentence; the maximum is determined by statute. *See, e.g.*, *Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010). Thus, under Michigan's guidelines, Marks's statement that he believed he would be sentenced "within the guidelines, 22½ to 37½" describes the range for his minimum sentence, not his total sentence. And that was, in fact, Marks's guidelines range. Michigan scores offenders based on their prior records and their offense characteristics. Both the prosecutor and defense counsel agreed at the plea hearing that Marks would score as a D-III offender under Michigan's Sentencing Guidelines. Under Michigan's Sentencing Grid, D-III non-habitual offenders who commit second-

degree murder have a "minimum-minimum" sentence of 270 months (22 ½ years) and a "maximum-minimum" of 450 months (37 ½ years). *See* Mich. Comp. Laws Ann. § 777.61. The maximum sentence for second degree murder is set by statute at life in prison. So when Marks stated that "nobody really promised me nothing, but within the guidelines, 22½ to 37½," his statement was a valid assessment of his minimum sentence. Not surprisingly, then, neither the trial court nor counsel disagreed with him when he made the statement.

Even if Marks was confused about the possible consequences of pleading guilty, the state court could have reasonably found that the plea colloquy cured any misunderstanding. Although all the circumstances surrounding Marks's plea are relevant to its voluntariness, *see Brady*, 397 U.S. at 749, the plea transcript itself carries great weight. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (statements at the plea hearing, along with findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings"). When the trial court informed Marks that second degree murder "is a felony punishable by any term of years up to life in prison," Marks knew the risk he ran by pleading guilty. The "Constitution does not require judges to explain the meaning of 'life sentence' . . . during the plea colloquy in order to combat alleged misinformation that is not revealed on the record." *McAdoo v. Elo*, 365 F.3d 487, 497 (6th Cir. 2004); *see also Carethers v. Wolfenbarger*, 407 F. App'x 14, 18 (6th Cir. 2011) ("'Maximum penalty' means just what it says—that this is the highest potential sentence [petitioner] could receive."); *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) ("Even assuming [counsel] gave her incorrect information, the trial court remedied any misconception by informing her of the potential maximum and minimum terms of imprisonment.").

In any event, it seems unlikely that Marks was ever confused about his possible sentence. In addition to his plea colloquy, other evidence supports the conclusion that Marks's plea was knowing and voluntary. First, Marks was no stranger to Michigan's criminal justice system. As an adult, Marks has had fourteen arrests, three felony convictions, and five misdemeanor convictions. His felony convictions alone would have made him familiar with how Michigan's Sentencing Guidelines operate. Second, Marks's actions at his sentencing indicate that he was aware of the possible consequences of pleading guilty. At sentencing, defense counsel stated that probation's recommendation of a 37 year minimum sentence was within the anticipated guidelines range at the time of the plea. *See* Sentencing Transcript, *Marks*, Case No. 2:08-CV-13710-GCS, R. 6-14 at 5. The prosecutor argued at length for a maximum sentence of 67 years. *Id.* at 19. Marks heard both statements, but never protested that he could not receive a sentence longer than 37 ½ years. *Id.* at 19-22. The sentencing hearing thus demonstrates that Marks did not misunderstand the terms of his plea agreement.

Marks cites two other types of evidence in support of his claim. First, he cites a statement he made at a pretrial hearing when he was trying to get a new attorney. There, he said that his counsel advised him that he should take a "twenty-year cop." But this statement was made before his actual plea and might represent a different stage of plea proceedings or a misunderstanding later corrected by counsel. Marks's statement could also have been a shorthand statement reflecting his eventual deal to a 22 ½ year minimum sentence. And he never referenced the "twenty-year cop" during his actual plea colloquy five days later. Second, after sentencing, Marks presented several affidavits (including his own and his parents) claiming that his attorney promised him a 22 ½ to 37 ½ year sentence. The state court, however, was not required to credit Marks's affidavits, even though

they went uncontested.  *See* 28 U.S.C. § 2254(e)(1); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011) (holding that a state court's summary denial of a state habeas petition, with no evidentiary hearing on numerous affidavits, did not require a state or federal evidentiary hearing). Since these affidavits are by interested parties and were sworn after sentencing, the state court could reasonably find them incredible in light of the contrary evidence in the record.  That neither the state court nor the district court explicitly discussed the affidavits does not mean that they did not consider them.  It appears, instead, that both the state and district courts found the affidavits insufficient to prove Marks's claims.  In the end, the state court decision does not contradict or unreasonably apply Supreme Court case law nor is it based on an unreasonable determination of material facts.

**B.      Request for Evidentiary Hearing**

Marks also requested that the district court hold an evidentiary hearing.  Although the district court did not specifically rule on Marks's hearing request, a hearing would have been unwarranted. When, as here, the state court decides a claim on its merits, our review is limited to the state court record.  *See Pinholster*, 131 S. Ct. at 1400; *Sheppard v. Bagley*, 657 F.3d 338, 344 (6th Cir. 2011) (applying *Pinholster* to § 2254(d)(2) claims).  Since Marks's claim was adjudicated on the merits, no hearing was necessary.

The district court's judgment is affirmed.