

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-39,987-04

### EX PARTE REGINALD JEROME CHRISTIAN AKA ANTOINE LEON CHRISTIAN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS CAUSE NO. 1093011-A IN THE 184th DISTRICT COURT FROM HARRIS COUNTY

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, YEARY, WALKER, SLAUGHTER and MCCLURE, JJ., joined. KEEL, J., filed a concurring opinion.

Applicant was convicted of possession of more than one but less than four grams of cocaine and sentenced to two years and nine months' imprisonment pursuant to a guilty plea in 2009.[1] Former Houston Police

---

[1] Although Applicant's sentence has run, he alleges he is suffering from collateral consequences including the use of this conviction as an enhancement for future charges. The habeas court found that this conviction was used as the underlying conviction in a felon in

Department Officer Gerald Goines, who has previously been found to have provided false information and testimony in drug cases, was involved in Applicant's arrest. In 2019, the Harris County District Attorney's Office notified Applicant that Goines had been relieved of duty and was under criminal investigation. Thereafter, Applicant filed an application for a writ of habeas corpus challenging his conviction on four grounds: (1) actual innocence (2) *Brady* violation (3) violation of his due process rights and (4) involuntary plea.[2] Applicant later filed an amended application abandoning the first three grounds and alleging only that his guilty plea was involuntary because he did not know that Officer Goines had engaged in misconduct in other cases and would have insisted on trial had he known.[3] The habeas court recommends relief be granted on the claim that Applicant's guilty plea was involuntary. We filed and set this case for submission to determine:

> (1) Was Gerald Goines's conduct in this case the type of misconduct that gives right to an inference of falsity under *Ex parte Mathews*, 638 S.W.3d 685 (Tex. Crim. App. 2022)?

---

possession of a firearm charge for which Applicant is currently serving a twenty-year sentence.

[2] This Court dismissed Applicant's initial writ application without written order noting Applicant's sentence had been discharged.

[3] After receiving the supplemental writ record from the district clerk containing Applicant's amended writ application and the habeas court's findings of fact and conclusions of law, this Court reconsidered the dismissal on its own motion.

(2)   Assuming an inference of falsity under *Mathews* applies, do the facts of this case rebut that inference of falsity?

(3)   Assuming an inference of falsity applies and was not rebutted by the facts of this case, was the false evidence provided by Gerald Goines material to Applicant's guilty plea?

## Background

According to Applicant, on November 15, 2006, the night of his arrest, he did not possess any drugs.[4]  Applicant denies that he told Goines that there were drugs inside of his vehicle as Goines alleged in his offense report.  Applicant maintains there were no drugs inside of his vehicle and alleges that Goines must have planted the cocaine found inside of Applicant's car.  Applicant theorizes that the drugs found in his vehicle must have belonged to Goines who fabricated the events of that night and falsified his offense report.

On July 30, 2009, Applicant pleaded guilty to possession of a controlled substance in exchange for time served.  In 2019, Applicant received a letter from the District Attorney's Office notifying him that Goines was under criminal investigation.  Applicant asserts that had he been aware of Goines's misconduct he would not have pleaded guilty,

---

[4] These assertions are taken from Applicant's unsworn declaration attached to his amended application for a writ of habeas corpus.

even upon the offer for time served, and instead would have insisted on going to trial.

At the outset, we note that the record before the Court as to the events of November 15, 2006, is not as thoroughly developed as it could be and lacks clarity. Applicant's proposed findings of fact and conclusions of law, which were adopted by the habeas court, attach the offense reports of only two of the officers involved in Applicant's arrest, Officers Goines and T.N. Castille. However, those reports both indicate that other officers were involved in the investigation, search, and arrest of Applicant. According to the State, for example, an Officer Francis was the primary officer involved in Applicant's arrest, but Officer Francis did not write a report. The State's briefing also refers to a report authored by an Officer Cardoza, which is not included in the record before this Court.[5] Applicant argues that Goines's version of events cannot be corroborated.

Turning to the offense reports included in the record, according to Officer Castille's report, at approximately 7:39 p.m. on November 15,

---

[5] The State filed a motion to supplement the record before this Court. That motion was granted. However, the State failed to file a supplement with this Court or the district court. The State's briefing refers to Officer Cardoza's report and other materials, including, for example, pro se Affidavits filed by Applicant before his guilty plea, which are not included in the record.

2006, he was called out to a liquor store parking lot to assist Officer Francis with a canine vehicle search. Officer Francis advised Officer Castille that Applicant was under arrest and that charges had been accepted by the District Attorney's Office. Additionally, Officer Castille's report sets out that Officer Francis had not searched the vehicle and Officer Francis wanted Officer Castille to search with the canine. Officer Castille recites that he searched Applicant's vehicle with his canine partner, Gale. According to the report, Gale gave the alert for the odor of narcotics in the center console of the vehicle. However, it is unclear from the report if Officer Castille personally recovered any narcotics from the vehicle. Officer Castille states in his report that he notified Officer Francis of the alert.

According to Officer Goines's report, Officer Goines was contacted on November 15, 2006, regarding a male who was being detained on suspicion of possession of a crack cocaine in a liquor store parking lot after officers were flagged down for a disturbance. Goines's report states that officers of the patrol division were investigating a nearby shooting when they were flagged down by Marcus Cook. According to the report, Cook informed patrol officers that a male, who had walked into the liquor store, had just pulled a pistol on him during an argument.

Applicant was detained walking out of the liquor store. According to Goines, Cook positively identified Applicant.

The record does not definitively establish which officer first searched Applicant's car. As the State concedes, it is also unclear at what point Goines arrived on scene or how many officers searched Applicant's vehicle. According to Goines's report, officers searched Applicant's vehicle and observed a clear plastic baggie with a rock like substance inside in the vehicle's center console. Officers then called for assistance from the narcotics division. This suggests, if the report is to be believed, that an officer other than Goines discovered the contraband and then requested Officer Castille's assistance.

Goines's report states that he arrived on the scene and read Applicant his *Miranda* warnings at 7:55 p.m. Applicant allegedly admitted to Goines that there were narcotics and currency inside of the vehicle but, according to the offense report, Applicant claimed they did not belong to him. Goines's report also states that Goines retrieved a plastic bag from the center console and conducted a field test on the contraband. Goines also states that he recovered a large sum of money

from the console, and, upon searching the trunk, found a pistol in plain view.[6]

The habeas court recommends that relief be granted on Applicant's claim that his plea was involuntary. The court also concluded that Applicant established by a preponderance of the evidence that his conviction was obtained through the use of false evidence. The court found that Applicant had proven all five *Coty-Mathews* factors and thus established an inference of falsity as to Goines's version of events surrounding Applicant's arrest.[7] The court found the false evidence material.[8] The habeas court concluded:

> under the facts of applicant's case, if the main investigating officer's misconduct in other cases could have been established at trial, it is reasonable to believe that a jury might have found reasonable doubt. Whether they would have or not is not the relevant inquiry. The relevant inquiry is whether it is reasonable to believe the applicant would have opted for a trial instead of a guilty plea if he had been able to reveal Goines's other misconduct to the jury. This Court finds that applicant's assertion in this regard is credible.

---

[6] Applicant was initially charged with possession of a controlled substance and felon in possession of a firearm but the felon in possession of a firearm charge was ultimately dismissed.

[7] *Ex parte Mathews*, 638 S.W.3d 685, 690-91 (Tex. Crim. App. 2022) (concluding it is appropriate to extend *Coty* to cases involving police officers who have lied to secure drug-related convictions but reiterating that all five factors must be met to achieve the "inference of falsity").

[8] *Id.* at 690 (even if the "State is unable to rebut an achieved inference of falsity, [a court] may still preserve the integrity of just convictions in which the inference of falsity does not ultimately prove to be material").

Having reviewed the record, such as it is, we determine that it does not support the habeas court's conclusion that an inference of falsity has been established because the conduct at issue is not the type of misconduct that gives rise to an inference of falsity. Unlike other cases applying an inference of falsity to Goines's conduct, here he was not the only officer involved in Applicant's arrest and the record before the Court fails to establish that he was even the first officer to find the contraband evidence. And because we hold that an inference of falsity does not apply in this case, there is no need to consider the second or third question set for submission. Therefore, we remand Applicant's case to the habeas court to consider Applicant's involuntary plea claim without applying an inference of falsity.

## Standard of Review

While the habeas court is the original factfinder, this Court is the ultimate factfinder on post-conviction review of habeas corpus applications.[9] Further, while we generally defer to and accept the habeas court's findings of fact and conclusions of law when they are supported by the record, we may exercise our authority to make

---

[9] *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008).

contrary or alternative findings and conclusions "[w]hen our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record."[10]

### Involuntary Plea

A guilty plea involves the waiver of several constitutional rights and therefore must be entered knowingly, intelligently, and voluntarily with sufficient awareness of the relevant circumstances and likely consequences.[11] Guilty pleas induced by threats, improper promises, or misrepresentations are not voluntarily entered.[12] We have recognized that false evidence may cause a defendant to be misinformed such that the defendant's knowledge of the relevant circumstances was insufficient for his or her plea to have been entered voluntary.[13] The "key factor" remains "whether a defendant has 'sufficient awareness of the relevant circumstances and likely consequences' such that his plea

---

[10] *Id.*

[11] *Brady v. United States*, 397 U.S. 742, 748 (1970).

[12] *Id.*

[13] *Ex parte Barnaby*, 475 S.W.3d 316, 322 (Tex. Crim. App. 2015).

is a knowing, intelligent act."[14] Voluntariness is determined by considering all of the relevant circumstances surrounding a guilty plea.[15]

### Coty-Mathews Inference of Falsity

To establish a false-evidence claim, applicants must generally establish that evidence was false and that the false evidence was material to the conviction or punishment.[16] In *Ex parte Coty*, we found that a claim based on a lab technician's pattern of misconduct was "analogous" to a false evidence claim.[17] In that case, the defendant argued that his guilty plea was obtained through the use of false evidence but he based that claim on the fact that the state-employed lab technician involved in his case had been found to have engaged in "dry labbing" to falsify lab results in other un-related cases.[18] This Court held that the proof of misconduct in other cases could establish an inference of falsity as to the evidence in question, if an applicant could show:

---

[14] *Id.* at 322-23 (citing *Brady*, 397 U.S. at 748).

[15] *Brady*, 397 U.S. at 749.

[16] *Barnaby*, 475 S.W.3d at 323 (citing *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014)).

[17] *Ex parte Coty*, 418 S.W.3d 597, 605 (Tex. Crim. App. 2014).

[18] *Id.* at 598.

(1) the technician in question is a state actor, (2) the technician has committed multiple instances of intentional misconduct in another case or cases, (3) the technician is the same technician that worked on the applicant's case, (4) the misconduct is the type of misconduct that would have affected the evidence in the applicant's case, and (5) the technician handled and processed the evidence in the applicant's case within roughly the same period of time as the other misconduct.[19]

Once an inference of falsity has been established, the burden shifts to the State to offer evidence establishing that the technician at issue did not commit intentional misconduct in the case in question.[20]  Even if the State cannot rebut the inference of falsity, the burden still remains on the applicant to show that the evidence was material to his or her conviction.[21]  In the context of a guilty plea, the burden of materiality is established by showing that the applicant would not have pleaded guilty but for the falsified evidence against him.[22]

In *Ex parte Mathews*, we considered whether the framework established in *Coty* in response to a state lab-technician's pattern of misconduct should apply to a police officer with a proven history of

---

[19] *Id.* at 605 (the Court "note[d] that the initial burden on applicants to establish an inference of falsity is also onerous").

[20] *Id.*

[21] *Id.*

[22] *Barnaby*, 475 S.W.3d at 327 ("[T]he materiality of false evidence is measured by what impact that false evidence had on the defendant's decision to plead guilty.").

falsifying evidence in drug cases.[23] In that case, Mathews challenged his drug conviction and argued, based on *Coty*, that this Court should infer that Goines's testimony against him was false because of Goines's history of misconduct in drug cases.[24] We agreed that *Coty* should extend to situations in which "a police officer has demonstrably lied in multiple instances in order to convict individuals of drug-related offenses."[25]

### Goines's Conduct is Not the Type of Misconduct that Gives Rise to an Inference of Falsity

In both *Coty* and *Mathews*, the state actor shown to have engaged in malfeasance in other cases was the only witness against the defendant. In *Coty*, the lab technician with a pattern of "dry labbing" in other cases was in sole possession of the evidence against the defendant, and he was responsible for the test results gleaned from that evidence used to implicate the defendant.[26] In *Mathews*, Goines was

---

[23] *Mathews*, 638 S.W.3d at 690

[24] *Id.* at 687-88.

[25] *Id.* at 692 (remanding for the habeas court to make an initial determination as to whether applicant established all five *Coty* requirements).

[26] *Coty*, 418 S.W.3d at 605 ("we hold that an applicant can establish that a laboratory technician's sole possession of a substance and testing results derived from that possession are unreliable, and we will infer that the evidence in question is false, if the applicant shows [the five-*Coty* factors]").

the "sole witness" to the crime allegedly committed by the defendant.[27] Goines alleged the defendant sold him a substance that later tested positive for cocaine but there was "no other evidence in the record to identify [the defendant] as the seller because the uniformed officers did not witness the [undercover] sale."[28] Goines was solely responsible for the alleged undercover drug bust that resulted in the collection of evidence and the defendant's subsequent arrest.[29]

The Court concluded in *Mathews* that it was appropriate to extend the requirements established in *Coty* to establish an inference of falsity to the circumstances presented.[30] The Court reasoned that the same considerations that justified the adoption of the inference of falsity in *Coty* "apply with as much force to cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions as it does for cases involving laboratory technicians who routinely falsify forensic test results and documentation."[31] Those justifications were,

---

[27] *Mathews*, 638 S.W.3d at 687.

[28] *Mathews*, 638 S.W.3d at 691.

[29] *Id.*

[30] *Id*. at 692.

[31] *Id.* at 690-91.

first, that the malfeasance by the state actors was egregious.[32]  Second, we reasoned that it would be unduly "onerous" for a defendant to have to prove the bad state actor's actual misconduct in his or her own case given the cost and time that such investigations would require and the possibility that "even then, evidence of misconduct may not come to light, even if it occurred."[33]  This makes sense given that the investigation at issue in *Mathews* was instigated entirely by a state actor, Goines, who was later shown to have propensity for falsifying information in drug cases.

Considering the *Coty* factors, in *Mathews*, the Court found Goines is clearly a state actor that "has a proven history" of providing false testimony and falsifying government documents in at least one drug-related set of cases (the Mallet cases in 2008).[34]  In the *Mallet* cases, Goines testified that, while working in an undercover capacity, he paid Steven Mallet for drugs that Steven then obtained from his brother, Otis Mallet.[35]  In both of those cases, this Court determined that the

---

[32] *Id.* at 690 (citing *Coty*, 418 S.W.3d at 605).

[33] *Id.*

[34] *Id.* at 691.

[35] *Ex parte Steven Mallet*, 620 S.W.3d 797 (Tex. Crim. App. 2021) (Richardson, J., concurring); *see also Ex parte Otis Mallet*, Nos. WR-90,980-01 & 02, 2020 WL 3582438 (Tex. Crim. App. 2020) (not designated for publication); *Ex parte Otis Mallet*, 602 S.W.3d 922 (Tex. Crim. App. 2020) (Richardson, J., concurring).

defendants were actually innocent of the charges brought against them by Goines.[36]  Goines was the sole witness against the Mallet brothers, and expense reports belied Goines's allegation that he had used police money for the alleged undercover transaction.[37]  The Court noted that Goines's previous misconduct was of a kind that would affect the evidence in *Mathews*, another case in which Goines was the sole witness against the defendant .[38]  The type of misconduct that has given rise to an inference of falsity in cases involving Goines has generally been understood to involve Goines acting as the sole fact witness or as a but-for cause of the defendant's arrest.

Here, while the record is not entirely clear, it is indisputable that there were multiple officers involved in Applicant's arrest.  The record does not establish that Goines was the only, or even the primary, officer involved in Applicant's arrest. Unlike *Mathews*, Goines was not the sole source of the allegations against Applicant.  Officer Castille reported that

---

[36] *Mallet*, 620 S.W.3d at 798; *Mallet*, 2020 WL 3582438 at *1.

[37] *Mallet*, 602 S.W.3d at 925 (Richardson, J., concurring) ("Applicant has proven that the sole witness to the crime is a police officer who willfully and knowingly perjured himself in order to secure Applicant's conviction"); *Mallet*, 620 S.W.3d at 800 (Richardson, J., concurring) (noting Goines was "the State's sole fact witness at trial and the only witness who said he saw a drug deal").

[38] *Mathews*, 638 S.W.3d at 691-692 (ultimately the Court remanded to the convicting court to determine whether all five *Coty* requirements had been established).

he was called to the scene by Officer Francis who informed him that Applicant was already under arrest. Officer Castille performed a search of the vehicle and his K9 unit alerted to the vehicle's center console where the drugs were found.[39]  Officer Goines was not the reason Applicant was detained nor did he instigate the investigation.  Applicant was detained by other officers for his suspected involvement in a disturbance in the parking lot and possibly a nearby shooting.  Unlike the *Mallet* and *Mathews* cases, Applicant was not arrested on the sole word of Goines acting alone in an undercover capacity.

Admittedly, the record is unclear about whether Goines was the first officer to find the contraband in the center console, although, a reasonable inference could be drawn to the contrary.  But to the extent Applicant now asserts that Goines alone had the opportunity to plant the drugs recovered in his vehicle, he has not met his burden to establish the same.[40]  Given the involvement of other officers both in the origination of the investigation involving Applicant and his subsequent arrest, this is not the type of case in which it would be

---

[39] While we only have Goines's report in the record in this case to suggest that Officer Castille discovered the narcotics first, it was incumbent upon Applicant to establish the actual sequence of events.

[40] *See Mathews*, 638 S.W.3d at 689 (noting under *Coty* the Applicant has the burden to establish the necessary predicate facts to apply an inference of falsity).

appropriate to apply an inference of falsity. Therefore, we conclude that Applicant's involuntary plea claim should be reviewed without the consideration of an inference of falsity.

## Conclusion

Applicant has failed to establish the applicability of the inference of falsity under *Mathews* because Applicant's case does not involve the type of misconduct that gives rise to an inference of falsity. Therefore, we remand to the habeas court to consider Applicant's involuntary plea claim without reference to an inference of falsity regarding Goines's conduct in Applicant's case.

Delivered: September 25, 2024

Publish